## No. 24170

## Douglas D. Redmond v. The People of the State of Colorado
(501 P.2d 1051)

Decided October 10, 1972.

Marshall Quiat, for plaintiff in error.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, Aurel M. Kelly, Assistant, for defendant in error.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

Douglas D. Redmond was convicted of possession of hashish and of conspiracy to possess hashish. C.R.S. 1963, 48-5-2 and C.R.S. 1963, 40-7-35. On writ of error, he asserts numerous grounds for reversal. We need not consider all issues raised by the defendant, since reversal is mandated by the admission of the defendant's confession in this case. We, therefore, reverse and remand for a new trial.

Redmond and Wolford were jointly charged and were brought to trial on charges of possession and conspiracy to possess hashish. Redmond and Wolford devised a scheme to acquire hashish in San Francisco for eventual use or sale in Denver. Marc Tobias, a part-time police informant and radio announcer, was included in their plans when he convinced them that he had police connections and could be of value to

them in arranging for the safe transportation of the hashish to Denver.

After the hashish was acquired in San Francisco, the trio made arrangements to fly to Denver. When airline reservations were made, Marc Tobias telephoned Lieutenant Kempter of the Commerce City Police Department and notified him of the time that they would arrive in Denver. When the trio arrived, the police took Redmond, Wolford, and Tobias, as well as a girl that was accompanying them, into custody. Marc Tobias thereafter informed the police that the hashish was secreted in the boot of the girl that was with the trio.

After the arrest was accomplished and prior to interrogation, Redmond was given a full *Miranda* warning. He also signed an advisement form which included the full *Miranda* warning. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). He was then interrogated by Detectives Jones and Gray of the Denver Police Department and Lieutenant Kempter of the Commerce City Police Department. During the interrogation, and before Redmond made any incriminating statements, Detective Jones told him that the police were interested in the involvement of Marc Tobias. Detective Jones admittedly told Redmond that the information which he provided, apart from that which involved Marc Tobias, would just be between the two of them and would be off-the-record and would not be used against him, even if it were incriminating.

Redmond refused to make any statement until Detective Gray left the room, but agreed to talk to Detective Jones. After Detective Gray left, Detective Jones commenced the interrogation and took notes on everything that Redmond said that related to Marc Tobias and stopped taking notes when Redmond discussed matters that did not, in Detective Jones's opinion, involve Marc Tobias. In offering Redmond's confession, Detective Jones acknowledged the agreement which he had made, but he said that he was only testifying as to matters which did involve Marc Tobias. He said that his note-taking indicated to Redmond that that part of his statement would be used against him. Redmond, however,

was never told that the barrier of immunity from prosecution, which Detective Jones created, had disappeared.

The trial court, by conducting an *in camera* hearing, determined the admissibility of the defendant's statement to the police and ruled that Detective Jones had complied with his agreement and that the portions of the statement which were included in Detective Jones's notes could be used by the jury. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Perez v. People,* 176 Colo. 505, 491 P.2d 969 (1971). The trial court predicated its ruling on the full *Miranda* warning which the police gave the defendant and on the fact that the defendant signed an advisement form. The sole question which we must determine is whether the admission of the defendant's statement to Detective Jones, in the light of the non-disclosure agreement which Detective Jones made, forecloses the admission of the statement made by Redmond. In our view, the clear language of *Miranda v. Arizona, supra,* prohibits the use of a blue-pencil test as a means of admitting part of Redmond's statement. This would not be consistent with the purpose of the *Miranda* warning. In *Miranda v. Arizona, supra,* the Court said:

"[A]ny evidence that the accused was threatened, tricked, or cajoled into a waiver will . . . show that the defendant did not voluntarily waive his privilege."

As an appellate court, we would be bound to accept the trial court's findings and the ruling on the admissibility of the statement if the evidence was sufficient to support the trial court's determination. *Gould v. People,* 167 Colo. 113, 445 P.2d 580 (1968); *cf., Oaks v. People,* 161 Colo. 561, 424 P.2d 115 (1967). In concluding that the evidence was insufficient and that the trial court abused its discretion in allowing the statement to be submitted to the jury, we are swayed by the prosecution's admission that Detective Jones did not terminate his agreement of silence with the defendant by any word or action, other than his decision to commence taking notes.

The basis for the pronouncement in *Miranda v. Arizona, supra,* was that a defendant should not be convicted

by his own words, unless he waived rights that the Supreme Court deemed fundamental under the provisions of the Fifth and Sixth Amendments to the United States Constitution. In this case, the warning was meaningless after the defendant was told that parts of his statement would not be used and that the focus of attention was not upon him, but upon Marc Tobias. *See People v. Johnson,* 70 Cal.2d 469, 74 Cal.Rptr. 889, 450 P.2d 265 (1969); *United States v. Harris,* 301 F.Supp. 996 (E.D. Wisc. 1969). With promises of the type that prompted this confession, it is impossible to determine what parts of the confession were truly voluntary and those segments which were, at best, inadmissible.

Accordingly, we reverse and remand for a new trial.