UNITED STATES of America,
Plaintiff,

v.

Lewis William HARRIS, Defendant.

No. 69–CR–46.

United States District Court
E. D. Wisconsin.

July 24, 1969.

Robert J. Lerner, U. S. Atty., and B. C. Drumm, Jr., Asst. U. S. Atty., Milwaukee, Wis., for plaintiff.

James P. O'Neill, Milwaukee, Wis., for defendant.

OPINION AND ORDER

REYNOLDS, District Judge.

The defendant, Lewis William Harris, is charged in a one-count indictment with burglary of the Post Exchange Retail Store (hereinafter "Post Exchange") located at the United States Disciplinary Barracks in Milwaukee County, Wisconsin, in violation of Title 18 United States Code of Laws §§ 7 and 13, and § 943.10(1) (a) of the Wisconsin Statutes.

The matter is before this court on the defendant's motion to suppress a confession which the defendant gave to special agents of the Federal Bureau of Investigation (hereinafter "FBI") on March 19, 1969, and to quash the indictment. A hearing limited to the defendant's motion to suppress the confession was commenced on May 16, 1969, and continued on May 23, 1969. At the conclusion of this hearing, the defendant's motion was taken under advisement. The matter is now ready for decision.

FACTS

The defendant was arrested by officers of the Milwaukee Police Department on March 17, 1969, for burglary of St. Gerard's Church in Milwaukee. At the time of his arrest, the defendant was serving a period of mandatory release from the Wisconsin State Prison.

A search of the defendant's apartment, conducted pursuant to a search warrant, led to discovery of money taken in the St. Gerard's burglary as well as an amount of marijuana. The money was found in a purse belonging to the defendant's girl friend, Shirley McCarthy, who was present in the apartment at the time of the defendant's arrest. As a result of this search, Miss McCarthy was placed under arrest for participation in the St. Gerard's burglary and for illegal possession of marijuana. The defendant and Miss McCarthy were taken into custody.

During the remainder of March 17, 1969, and again on March 18, 1969, several conversations took place at the Milwaukee County Jail between the defendant and officers of the Milwaukee Police Department. Agents of the FBI were also present during some of these conversations. They had come to the jail in order to question the defendant with regard to the Post Exchange burglary. Among the law enforcement officers participating in these conversations were Detective Paasch of the Milwaukee Police and Special Agent Dennis P. Joyce of the FBI.

During the course of these conversations, the defendant indicated to the officers and agents present that he was willing to provide them with certain information if in return they would be willing to see that he received certain considerations. More specifically, the defendant agreed to provide the officers and agents not only with confessions to both the St. Gerard's and Post Exchange burglaries, but also with additional information regarding fifty to one hundred other burglaries in the Milwaukee area as well as "organized crime" in general on the condition that the officers agree to certain reciprocal conditions. These conditions were (1) that Miss McCarthy be released without any charges filed against her; (2) that no charges, other than the St. Gerard's and Post Exchange burglaries, be filed against the defendant as a result of ei-

ther the search of his apartment or the additional information which he would turn over to the officers and agents; and (3) that the remaining period of his state mandatory release (approximately 27½ months) be permitted to run concurrently with whatever sentence he received in a federal penal institution as a result of his confession to the Post Exchange burglary.

The defendant further indicated that he was willing to enter into such a cooperative agreement because it would afford him an opportunity to "clear his slate," so to speak, by serving a period of imprisonment in a federal institution, after which time he would be eligible for release without any state detainer against him. He also made it very clear that under no circumstances did he wish to be returned to the Wisconsin State Prison. He stated that he feared for his personal safety if, at the conclusion of his federal sentence, he were to be returned to the Wisconsin State Prison (the very institution where the men he would implicate could be sent) to serve the remaining period of his prior state sentence.

The testimony of the officers and agents present during these conversations indicates that they believed that the defendant did in fact have information which they were interested in obtaining. The officers and agents also understood that the defendant expected certain treatment in consideration for his information, and that he was relying on their indications that they would do everything within their power to work out a cooperative arrangement with the state authorities that would be satisfactory to both the defendant and the law enforcement agencies involved.

The defendant testified that as a result of these conversations, he and the officers and agents entered into what the defendant has described as a "checker game." In the defendant's words, he was to show his willingness to provide valuable information by confessing to the St. Gerard's burglary. In return,

the officers and agents were to show their willingness to meet the defendant's conditions by releasing Miss McCarthy without filing charges against her. According to the defendant's testimony, it was then contemplated that the defendant and the officers would alternate between providing information and securing the requested reciprocal conditions until each side had fully performed their part of the cooperative arrangement. The officers and agents did not take issue with the defendant's "checker game" characterizing of cooperative understanding.

Following these conversations, the defendant confessed to the St. Gerard's burglary. After the Milwaukee police had his confession, they released Miss McCarthy without charges. It also appears from the testimony that the defendant and the officers agreed that in lieu of filing any additional state charges against the defendant, the marijuana possession as well as any other burglaries in which the defendant might involve himself in the process of providing further information would be read into the court record of the St. Gerard's charge.

The officers and agents testified that they informed the defendant that his third and only unmet condition (that his state time be permitted to run concurrently with the federal sentence he would receive) could only be granted by the Department of Health and Social Services of the State of Wisconsin (hereinafter "Department"), but that they would assist the defendant in the typing up of his request and thereafter would do everything within their power to persuade the Department to grant his request.

Thereafter, on March 19, 1969, the defendant, after having been informed of his rights, gave the statement, which he now wishes to have suppressed, to agents Dennis P. Joyce and Charles A. Tosi of the FBI. In this statement the defendant confesses to having burglarized the Post Exchange.

The defendant testified that he made this confession as one of his "moves" in the "checker game." He stated that in making this "move" he believed that in return his third condition would be met in the same manner as had his first two conditions following his prior "move."

Testimony regarding subsequent events indicates that the officers and agents did in fact live up to their agreement by doing everything within their power to persuade the Department to agree to the defendant's request. Deputy Inspector Marple of the Milwaukee police contacted Mr. Oehmcke, a field agent of the Department and former liaison agent between the Department and the Milwaukee police, and asked him to intercede with the Department on the defendant's behalf. As a result of this contact, Mr. Oehmcke visited the defendant in the Milwaukee County Jail and subsequently delivered the defendant's written request to Mr. Jorgensen, the Department's agent in charge of supervising the defendant's mandatory release. The officers and agents later talked with Mr. Jorgensen and impressed upon him the importance to law enforcement of the Department's cooperating with the defendant.

As a result of these endeavors, Mr. Jorgensen filed a report with Richard M. Larsen, chief of the Department's Milwaukee region, in which he strongly recommended that the Department grant the law enforcement official's request that the defendant's state time run concurrently with any federal time which he would receive.

On April 11, 1969, Larsen, despite the strong recommendation of Jorgensen and the urgings of the Milwaukee police and the FBI, sent a memorandum to G. W. Kressin, Acting Director of the Department's Bureau of Probation and Parole, in which he recommended that the law enforcement official's request be denied and that the defendant's mandatory release be revoked. When the defendant was notified of Larsen's recommendation, he refused to cooperate further. In his

opinion, the law enforcement agencies had called a halt to the "checker game."

The record further indicates that for some reason which the Department's officials were unable to explain, the Department has never taken any further action on the law enforcement official's request. In fact, the Department's officials in Madison had not even heard of their request prior to this motion.

### RULING

 A confession is admissible if it was freely and voluntarily given. In ruling on the admissibility of a confession, a court must therefore determine whether the confession was voluntary or whether it was the product of violence, threats, or direct or implied promises, however slight. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1963); Haynes v. Washington, 373 U. S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1962); Grades v. Boles, 398 F.2d 409 (4th Cir. 1968). If a court should determine that a confession was the result of improper inducement, it must suppress the confession.

In the instant case there is no evidence of threats, violence, or express promises. The defendant, however, has testified that *he believed* that his confession was but a further step in the cooperative understanding which he and the law enforcement officials had agreed upon.

 Inquiry into the voluntariness of a confession necessarily involves the confessor's state of mind. In this connection, it has been held that a confession is involuntary, and hence not admissible, if it was elicited by the confessor's belief that a reciprocal promise had been made to him, whether in fact any such promise was ever made. United States ex rel. Thurmond v. Mancusi, 275 F. Supp. 508 (E.D.N.Y.1967).

 I find that the defendant's confession was prompted by what he reasonably believed to be an implied promise on the part of the officers and agents, even though in fact no such promise was ever made. The defendant offered to provide the officers and agents with confessions and other information in exchange for certain reciprocal treatment. Based on the conduct of the law enforcement officials both before and after his confession to the St. Gerard's burglary, the defendant concluded that they had promised to meet his reciprocal conditions. It was this belief that an implied promise had been made to him which induced him to confess to the Post Exchange burglary.

In reaching this finding, I am prompted by several factors. First, while there are minor discrepancies in the testimony of the various witnesses, the defendant's account of the circumstances surrounding his confession is uncontradicted in its essential elements. Second, at the time the defendant confessed, the defendant's first two conditions had already been met by the officers after they had received his confession to the St. Gerard's burglary. Third, the defendant had no reason to believe that his final, and simplest, condition would not be met in return for his confession to the Post Exchange burglary. In short, a pattern of cooperation had been agreed upon and performed with regard to his prior confession. There was no reason for the defendant not to believe that in return for the Post Exchange confession the officers and agents would be unable to arrange for his mandatory release to run concurrently with any future federal sentence.

Having found that the defendant confessed in return for what he believed to be the promise of the law enforcement officials to secure certain reciprocal treatment, I hold that his confession of March 19, 1969, was not voluntary and hence is inadmissible.

For the foregoing reason,

It is ordered that the motion of the defendant, Lewis William Harris, to suppress his confession of March 19, 1969, should be and it hereby is granted.