UNITED STATES of America, Plaintiff,

v.

Billy Louis TURNER, Defendant.

UNITED STATES of America, Plaintiff,

v.

Paul Keener DYKES, Stanford Brown McKay et al., Defendants.

Nos. CR–4–75–15 and 16.

United States District Court,
E. D. Tennessee,
Winchester Division.

Feb. 4 and 5, 1976.

Ray H. Ledford, Asst. U. S. Atty., Chattanooga, Tenn., for plaintiff.

Joe S. Bean, Joe R. Hickerson, and Buddy D. Perry, Winchester, Tenn., for defendants.

## MEMORANDUM OPINION AND ORDER

NEESE, District Judge.

The defendant Mr. Stanford Brown McKay moved to suppress evidence of statements he made to special agents of the Federal Bureau of Identification (FBI) herein on September 8, 1975. Rules 41(f), 12(b)(3), Federal Rules of Criminal Procedure. The prosecuting attorney specified the portions of such statements it intends to introduce on the trial. Rule 12(d)(1), Federal Rules of Criminal Procedure. An evidentiary hearing on such motion was conducted by the Court on February 3, 1976, after which the matter was held in advisement.

Mr. McKay had been working as an informant for the police department of the Nashville-Davidson County, Tennessee, Metropolitan Government. He had provided information in the form of tape recordings and was interviewed in April, 1975 in a Tennessee jail, where he was being held in lieu of bond on another charge, by Mr. Charles J. Gisler, an FBI agent. He testified that this agent " * * * was emphatic about not using me or letting the source of the information get out * *" concerning the information which Mr. McKay gave him. He said that Mr. Gisler assured him that his only concern was " * * * help in getting this thing [a vehicle theft-ring] stopped. * * *" Mr. McKay said Mr. Gisler's promises induced him to believe that the source of the information he had provided would not be relayed to a grand jury, a United States attorney, " * * * or anyone else."

Mr. John D. Jones, a veteran FBI agent, went with Mr. Gisler to visit Mr. McKay on September 8, 1975, after the latter was transferred to the Tennessee state penitentiary, near Nashville. Mr. Gisler made the introduction, and Mr. Jones advised Mr. McKay that he (Mr. Jones) was the "case agent" herein. He advised Mr. McKay of his rights to silence, to counsel, and against self-incrimination. Mr. McKay made a written waiver of his rights and talked with Mr. Jones. Mr. McKay then gave Mr. Jones information implicating himself and others in certain aspects of the crimes charged in the indictment herein. Mr. Jones inquired if Mr. McKay was willing to testify as to the matters about which he had given information, and Mr. McKay replied that, because he was in prison and in a confidential relationship with the Metropolitan police, he could not so testify.

On May 28, 1975 a criminal complaint, charging him with violation of 18 U.S.C. § 2312 (the Dyer Act), had been issued against Mr. McKay herein. It was filed as a detainer against Mr. McKay in Florida and, when Mr. McKay was returned to Tennessee, it was relayed to the Tennessee state penal authorities. Mr. McKay knew of this detainer and complained to Mr. Jones that the filing of the detainer had worked adversely to his obtaining a desired classification in the state prison. He re-

quested Mr. Jones: " * * * If you're going to do anything about it, do it now. * * * " Mr. Jones replied: " * * * I don't think you have anything to worry about there, Stan. * * * " It is insisted on behalf of Mr. McKay that the foregoing constituted undue influence in the nature of a promise on behalf of the national government that he would not be indicted or prosecuted herein, and that the promise rendered Mr. McKay's statements involuntary and untrustworthy communications for that reason.

■ The necessity that an admission to be admissible in evidence must have been freely and voluntarily made goes back to the quotation approvingly by the late Mr. Justice (later Chief Justice) White of the following text concerning confessions:

\* \* \* \* \* \*

But a confession, in order to be admissible, must be free and voluntary; that is, it must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. . . . A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted. * * *

*Bram v. United States* (1897), 168 U.S. 532, 542–543, 18 S.Ct. 183, 187, 42 L.Ed. 568. It is said that such rule " * * * excludes untrustworthy communications. * * * [T]he rule applies * * * to statements uttered out of court. It protects against extrajudicial physical and moral forces, applied where the privilege has no effect, and which take away the speaker's will and make his words another's, not his own. It excludes evidence so squeezed out because it has no value as proof. * * * " *Wood v. United States* (1942), 75 U.S.App.D.C. 274, 128 F.2d 265, 268[1]. Thus, admissions when " * * * freely and voluntarily made, without threat or inducement, and

without taint of illegality in their procurement, * * * are universally admitted in evidence. Indeed they are regarded as of exceptionally valuable probative quality. Circumstances under which such statements are made may render them inadmissible. Sometimes the circumstances (coercion, inducements, etc.) are deemed to render the statement testimonially untrustworthy * * * ". (Footnote references omitted.) *Jones v. United States* (1962), 111 U.S.App. D.C. 276, 296 F.2d 398, 402[4]. In addition to the issue of whether Mr. McKay's statements were given involuntarily, there is the concomitant issue of whether Mr. McKay believed reasonably that he has been promised that he would not be indicted and prosecuted, even though no such promise had in fact been made; and, if so, whether such belief induced his statement and deprived it of its voluntary character. See *Grades v. Boles*, C.A.4th (1968), 398 F.2d 409, 412; *United States v. Harris*, D.C.Wis. (1969), 301 F.Supp. 996, 999[4]; *United States v. Denno*, D.C.N.Y. (1966), 259 F.Supp. 784, 790[4].

■ The totality of the circumstances leads the Court to the finding that Mr. McKay's statements were trustworthy and were voluntarily and understandingly made. He had not been reluctant to talk with municipal law enforcement officers concerning possible criminality and provided them and the federal agent, Mr. Gisler, with leads toward the uncovering of crime. He is obviously a well-advised individual who was fully aware that he was not required to talk with anyone about any crime. He was reminded of his basic rights orally and waived them in writing. Had he proved willing at some point to testify in the appropriate forums concerning the information he had freely and voluntarily given Mr. Jones, it is conceivable that he might have been offered immunity from prosecution in exchange for his testimony. In that event, indeed he would not have had "* * * anything to worry about there * * *". In short, Mr. McKay "talked" because he appeared to want to talk and not because, subsequently, he was the recip-

ient of even a "slight" promise of immunity. Had this been the motive for his providing the information he gave, the Court believes Mr. McKay would have "* * * had his understanding * * *" before he produced his information. In summary, the Court finds that no influence in any degree was exerted by Mr. Jones or Mr. Gisler to obtain the voluntary statements Mr. McKay gave the former.

Accordingly, the motion of the defendant Mr. Stanford Brown McKay to suppress evidence of his statements herein of September 8, 1975 hereby is

DENIED.

## ON AMENDED MOTION

The Court considered the motion to suppress of the defendant Mr. Stanford Brown McKay in the context of his amendment thereto, finds the same and the grounds urged in its support lack merit, and hereby OVERRULES such motion.

Such defendant had not been arrested under the complaint filed against him earlier herein at the time he gave statements to agents of the Federal Bureau of Investigation; he was in the custody of the state of Tennessee on another charge and could not then have been arrested under the federal complaint. Assuming *arguendo* that he was in arrest thereunder and that his statements amounted to a confession, he was deprived of no right under the provisions of 18 U.S.C. § 3501(c). *United States v. Halbert*, C.A.9th (1970), 436 F.2d 1226, 1230–1233[7], cited in *United States v. Marrero*, C.A.2d (1971), 450 F.2d 373, 377–378[5], 378[6–8], certiorari denied (1972), 405 U.S. 933, 92 S.Ct. 991, 30 L.Ed.2d 808.