UNITED STATES of America, Plaintiff,

v.

Jerry Gregory WILLIAMS, Defendant.

Crim. A. No. 77–84.

United States District Court,
D. Delaware.

Feb. 17, 1978.

Alan J. Hoffman, Asst. U. S. Atty., Dept. of Justice, Wilmington, Del., for plaintiff.

David Roeberg, Roeberg & Agostini, P. A., Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

Defendant Jerry Gregory Williams has moved for reargument of an evidentiary ruling denying a motion to suppress an allegedly involuntary statement.[1] Following a hearing on December 5, 1977, this Court held that the potentially inculpatory statement in question was voluntary and

---

1. The statement appears in the record as Exh. A to Doc. 10. It outlines in some measure of detail defendant's alleged involvement as "getaway" driver in a December 23, 1976 robbery of the 30th and Market St. branch of the Farmers Bank of the State of Delaware in Wilmington, Delaware.

freely made in exchange for a reduction in bail and indictment for a lesser offense.[2] It was further determined that each side fulfilled its part of the bargain.

The agreement in question was fashioned prior to indictment. Defendant was initially charged, by complaint, with violation of federal bank robbery law, 18 U.S.C. § 2113(d). Subsequent to his arrest, defendant on September 21, 1977 was presented before a local magistrate and incarcerated in lieu of $50,000 full surety bail.[3] During the course of defendant's confinement, defendant's mother contacted an F.B.I. agent for the primary purpose of ascertaining whether her son's bail could be reduced. A meeting between the F.B.I. agent and Mrs. Williams was held the morning of September 23, 1977, the same morning defendant was scheduled to appear before a United States Magistrate for the formal setting of bail to secure his appearance at a preliminary hearing. The F.B.I. agent informed Mrs. Williams that a bail reduction was "possible" if defendant cooperated with the United States government. The government has represented that the F.B.I. agent also explored with Mrs. Williams the possibility of a reduction in the crime charged in exchange for her son's cooperation.[4] The F.B.I. agent informed Mrs. Williams that any arrangements with regard to her son must be made through the United States Attorney's office.

Following her meeting with the F.B.I. agent, Mrs. Williams conferred with her son. Sometime after this meeting, but before defendant was brought before the United States Magistrate, Mrs. Williams reported back to the F.B.I. agent that a pre-indictment agreement could be arranged. The F.B.I. agent informed the United States Attorney's office which approved the exchange of a lower bail and indictment for a lesser charge of bank robbery for a statement from defendant concerning his involvement with the matter at issue. Also prior to defendant's appearance before the United States Magistrate, the F.B.I. agent spoke to defendant to assure that agreement could be achieved.[5]

Apparently the F.B.I. agent was convinced of defendant's willingness to make the exchange, because the United States Attorney recommended to the United States Magistrate that defendant be released on $1000 bail. This bail was met and defendant was released from custody. At that point, although he presumably could have exited from the courthouse,[6] defendant chose to proceed to the F.B.I. office in the courthouse to make a statement. Before any statement was taken, defendant was presented with a waiver of rights form entitled "Interrogation; Advice of Rights,"[7] which set forth in simple English

**2.** Doc. 11. Specifically, defendant was charged under 18 U.S.C. § 2113(b) instead of 18 U.S.C. § 2113(d).

Doc. 11 constitutes a portion of the transcript of the hearing of December 5, 1977. Apparently at counsel's request, the latter segment of the transcript, in which findings of fact concerning the representations of the parties were made, was typed but the remainder of the hearing has not been transcribed.

In describing below various aspects of the factual circumstances of this case, the Court relies in part on its own notes of the portions of the hearing that have not been typed by the reporter.

**3.** *See* Doc. 2.

**4.** Doc. 13, at 2. Mrs. Williams has orally denied under oath that the charges were discussed.

**5.** Defendant has averred that the F.B.I. agent told him that if he gave a statement, he would

have to serve no more than five years in jail. The Court ruled after the hearing that no promise was made to defendant concerning the length of the term of incarceration he would receive if convicted. In so ruling, the Court credited the testimony of the F.B.I. agent, concluding that at most defendant was told that it was "possible" he would receive a particular sentence and that he would have been informed that this sentence in any case would have been more than five years.

**6.** This opportunity to exit was acknowledged by defendant at the December 5, 1977 hearing.

**7.** GX 1. Defendant stated that to the best of his recollection, he read and signed the statement in open court before the United States Magistrate, and not in the F.B.I. office. The Court credits the representation of the F.B.I. agent that the statement was made in the F.B.I. office, taking notice of the time of day refer-

his basic legal rights, including the right to remain silent and the right to counsel, and that counsel would be appointed if necessary. Defendant read and signed the form,[8] which was witnessed by two F.B.I. agents. Then defendant gave the statement which is the subject of the current motion. Thereafter, the Grand Jury returned an indictment charging defendant with bank robbery in violation of 18 U.S.C. § 2113(b).

Essentially, defendant's theory in support of reargument is that as a matter of law an incriminating statement given as "the product of direct or implied promises however slight"[9] is involuntary and must be suppressed. The basis for defendant's contention is language initially employed in a text on crimes and thereafter judicially embraced in *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897) (quoting 3 *Russell on Crimes* 478 (6th ed.)):

> "But a confession, in order to be admissible . . . must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. . . . A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used, or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted."

This language has been reiterated in whole or part in subsequent cases. *See, e. g., Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 50 L.Ed.2d 194 (1976) (per curiam); *Brady*

*v. United States*, 397 U.S. 742, 753, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *United States v. Turner*, 423 F.Supp. 959, 961 (E.D.Tenn. 1976).

Although this *Bram* statement frequently has been articulated, it seldom if ever has been applied in the absolute per se fashion defendant deems appropriate. The government urges that the relevant voluntariness determination entails an analysis of the totality of the circumstances, and that existence of a promise is not necessarily decisive. In support of its stance, the prosecutor points to the cogent distinction of *Bram* provided in *United States v. Ferrara*, 377 F.2d 16, 17 (2d Cir.), *cert. denied*, 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967):

> "The *Bram* opinion cites with approval the statement in an English textbook that a confession is not voluntary if 'obtained by any direct or implied promises, however slight'. That language has never been applied with the wooden literalness urged upon us by appellant. The Supreme Court has consistently made clear that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined * * *.' *Rogers v. Richmond*, 365 U.S. 534, 544, 81 S.Ct. 735, 741, 5 L.Ed.2d 760 (1961) . . . ."[10]

In seeking to resolve the issue at bar, three precedents are particularly instructive. The most recent Supreme Court case touching upon the question is *Hutto v. Ross, supra*. Although defendant correctly cites *Hutto* as reaffirming that *Bram* retains a measure of validity, the case must be per-

---

enced on the form, the nature of the form, and the witnesses who signed the form.

**8.** Defendant testified at the hearing that he is a high school graduate, he can read, he read the form, and he signed it.

**9.** Doc. 12, at 3.

**10.** *See Brady, supra*, 397 U.S. at 754, 90 S.Ct. at 1472 (footnote omitted):
> "But *Bram* and its progeny did not hold that the possibly coercive impact of a promise of

leniency could not be dissipated by the presence and advice of counsel, any more than *Miranda v. Arizona*, 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), held that the possibly coercive atmosphere of the police station could not be counteracted by the presence of counsel or other safeguards.

The Court regards this statement as a clear indication that *Bram* does not impose a per se requirement of suppression.

used in context to provide meaningful guidance. *Hutto* reversed an Eighth Circuit suppression of a statement, the Court reasoning that a confession is not per se inadmissible because made "subsequent to an agreed upon plea bargain that did not call for such a confession." 429 U.S. at 30, 97 S.Ct. at 203 (footnote omitted). In salient part, the facts were that after being charged by criminal information, defendant, assisted by counsel and informed of his rights, commenced plea negotiations with the prosecuting attorney and ultimately reached an agreement that a plea of guilty would be entered on the "understanding" that a recommendation would be made that defendant be given a fifteen year jail sentence, of which ten years would be suspended. More than two weeks later, defendant responded to a request of the prosecuting attorney and confessed to the crime, even though his counsel informed defendant of his constitutional rights and that the plea bargain did not depend upon a confession. Sometime thereafter, defendant repudiated the plea bargain, obtained new counsel, and demanded a jury trial. The trial judge heard evidence outside the jury's presence and ruled the confession to be voluntary. Upon eventually adjudicating the case, the Supreme Court noted that the only question it was deciding was whether the confession was per se inadmissible. Ruling in the negative, the Court noted: "The confession thus does not appear to have been the result of 'any direct or implied promises' or any coercion on the part of the prosecution, and was not involuntary." *Id.* Thus, contrary to defendant's assertion, *Hutto* does not resolve the dispute in the case at bar.

Two conflicting lower court precedents do, however, address the issue before the Court. Defendant relies upon *United States v. Harris*, 301 F.Supp. 996 (E.D.Wis. 1969). In *Harris*, defendant, while serving a period of mandatory release from state prison, was arrested along with his girl friend after a search of his apartment led to discovery of money taken in a burglary as well as a quantity of marijuana. Because the money was found in the girl friend's purse, she was arrested, and defendant was also taken into custody. Thereafter a series of conversations transpired in the county jail between defendant and local police, who were sometimes accompanied by F.B.I. agents. Eventually, an agreement was reached to carry out what was termed a "checker game," 301 F.Supp. at 997, wherein defendant would provide certain information to the authorities in exchange for certain considerations. For a time, the checker game proceeded satisfactorily, both sides performing their parts of the cooperative arrangement. Finally, however, the game hit a snag. After defendant confessed to the burglary, police officials failed to fulfill the last consideration expected by defendant, that his state time be allowed to run concurrently with whatever federal time he received. The police explained that they could only make a recommendation, which they did, but that it was not within their power to grant defendant's request. The trial judge found that defendant believed that his confession was but a further step in the cooperative arrangement. This belief of defendant's was dashed when the authorities failed to complete the bargain by taking the next expected step. In this context, relying literally upon the *Bram* rule,[11] the district court held: "Having found that the defendant confessed in return for what he believed to be the promise of the law enforcement officials to secure certain reciprocal treatment, I hold that his confession of March 19, 1969, was not voluntary and hence is inadmissible." 301 F.Supp. at 999.

Contrasting with *Harris* is *Hunter v. Swenson*, 372 F.Supp. 287 (W.D.Mo.), aff'd, 504 F.2d 1104 (8th Cir. 1974), cert. denied, 420 U.S. 980, 95 S.Ct. 1410, 43 L.Ed.2d 662 (1975). *Hunter* provides perhaps the most

11. Although not citing *Bram, Harris* reiterated the rule of *Bram*, attributing it to *Malloy v. Hogan*, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1963); *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1962); and *Grades v. Boles*, 398 F.2d 409 (4th Cir. 1968). Each of these cases cited *Bram* as justification for the rule. 378 U.S. at 7, 84 S.Ct. 1489; 373 U.S. at 513, 83 S.Ct. 1336; 398 F.2d at 411.

detailed exposition of guiding principles of any relevant case. Two days after a robbery and murder, the investigation began to focus on defendant and another man, both of whom were brought to a local police station. Defendant voluntarily spoke to police officers and agreed to take a polygraph test the next day. Almost one month later, following additional voluntary visits to the police station, defendant was arrested in another state for possession of a firearm after a felony conviction. Subsequently released, defendant returned to his home state, but a warrant for his arrest again issued on the possession of a firearm charge and defendant was arrested and detained pending extradition. While held in jail, defendant was again interviewed concerning the earlier robbery and murder and, after being told that the other man involved accused him of the murder, made certain unrecorded statements. Later that same day, the officer returned with a stenographer. After informing defendant of his rights, the officer reinterviewed him. Defendant suggested a deal but it was rejected by the officer. The essence of the deal was that defendant would provide a statement regarding the murder in exchange for dismissal of the firearm possession charge in the other state. The police officer "unequivocally" informed defendant that he was in no position to bargain but that all information would be relayed to the prosecuting attorney. Sometime later, defendant indicated that he now wanted to talk. The police officer again informed defendant of his rights and also told him that he had communicated with the prosecuting attorney, who "would consider charging [defendant] Hunter with an offense less than murder if Hunter would cooperate and give a truthful statement and if Hunter was not directly involved in the murder." 372 F.Supp. at 294. Defendant then made an incriminating oral statement.

In this circumstance, the trial judge concluded as a matter of law that defendant's statement was voluntary. Initially, the district court found no express or implied promise of leniency had been made and defendant did not so believe. The lower court then determined that assuming a promise or a belief thereof, it was not causal of the incriminating statement in a "but for" sense. Such a but for relationship suffices under a *Harris* interpretation of *Bram* to render a confession involuntary. Critically for purposes of the instant motion, however, the district court went even further, concluding that even if a promise and/or reasonable belief existed, and the statement would not have occurred but for such a condition, the statement "was not constitutionally impermissible because it was not coercive." 372 F.Supp. at 300.

> "More than a 'but for' relationship is required to bar an admission or confession from evidence. The Fifth Amendment does not condemn all promise-induced admissions and confessions; it condemns only those which are *compelled* by promises of leniency. This is amply illustrated by the Supreme Court's treatment of promise-induced guilty pleas, *i. e.* judicial confessions. The mere fact that a guilty plea is induced by a promise of leniency does not render the plea involuntary. *Santobello v. New York,* 404 U.S. 257, 261–262 [92 S.Ct. 495, 30 L.Ed.2d 427] (1971) . . .."

*Id.*

On appeal, *Hunter* was affirmed by the Eighth Circuit, but without deciding whether one must show more to suppress a statement than that it would not have been given but for a promise having been made. Indicating that it was "unnecessary" to resolve that question, the circuit court expressed doubt concerning the district court's citation of *Santobello, supra.* The circuit court perceived *Santobello* only to hold that if a guilty plea depends to a significant degree on a promise of a prosecuting official, that promise must be fulfilled. Finally, the circuit court noted: "A similar rule was applied to require exclusion of a confession based on a false promise of leniency in *Grades v. Boles,* 398 F.2d 409 (4th Cir. 1968)." 504 F.2d at 1105.

■ The facts of these cases have been recited in detail because of the critical need

in evaluating a confession's voluntariness to devote particularized attention to the nuances of individual circumstances. The Court disapproves the contention that *Bram* imposes an inflexible per se rule condemning any incriminating statement obtained as a result of a promissory inducement. At least three reasons justify this conclusion.

First, the facts of *Bram*, relied upon as the genesis for and prototype of the absolute per se but for test, do not necessitate such a rule.[12] The *Bram* context was such that the inducements offered were strongly coercive of the ensuing confession. As stated in *Brady, supra*, 397 U.S. at 754, 90 S.Ct. at 1472, "*Bram* dealt with a confession given by a defendant in custody, alone and unrepresented by counsel. In such circumstances, even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement and the possible impact on them too great to ignore and too difficult to assess." To more clearly comprehend the obviously coercive nature of the situation in *Bram*, this passage from the opinion is particularly instructive:

> "The crime had been committed on the high seas. Brown, immediately after the homicide, had been arrested by the crew in consequence of suspicion aroused against him, and had been by them placed in irons. As the vessel came in sight of land, and was approaching Halifax, the suspicions of the crew having been also directed to Bram, he was arrested by them and placed in irons. On reaching port, these two suspected persons were delivered to the custody of the police authorities of Halifax and were there held in confinement awaiting the action of the United States consul, which was to determine whether the suspicions which had caused the arrest justified the sending of one or both of the prisoners into the United States for formal charge and

> trial. Before this examination had taken place the police detective caused Bram to be brought from jail to his private office, and when there alone with the detective *he was stripped of his clothing*, and either whilst the detective was in the act of so stripping him, or after he was denuded, the conversation offered as a confession took place."

168 U.S. at 561–62, 18 S.Ct. at 194 (emphasis in original). Given this context, one would be hardpressed to allow the confession in evidence not only under a "but for" or "coercive under the totality of circumstances test," but even under an imaginary stricter standard such as "shocking to the conscience." Moreover, defendant Bram did not even receive the benefit of his bargain; the opinion does not disclose that he received any benefit by virtue of his confession. As already noted, the Eighth Circuit in *Hunter* concluded after citing cases that this absence of fulfillment of an inducement is material. Thus *Bram* involved a custodial confession made under obviously coercive circumstances in which the conversation and the offering of an inducement were initiated by police authorities and the confession was made for an inducement sufficiently slight to cast doubt upon whether the resulting incriminating statements were either voluntary or intelligent.

■ Second, analysis of cases discussing the voluntariness of statements in the context of inducements by prosecuting authorities discloses that the factual nuances referred to above may well be dispositive. A non-exhaustive list of potentially material considerations includes whether: (1) defendant is in custody at the time of the statement, *see, e. g., Brady, supra*, 397 U.S. at 754, 90 S.Ct. 1463; *Bram, supra*, 168 U.S. at 562, 18 S.Ct. 183; *Grades, supra*, 398 F.2d at 413; *Williams v. United States*, 328 F.2d 669, 671 (5th Cir. 1964); *Harris, supra*, 301 F.Supp. at 997; (2) defendant is alone and unrepresented by counsel, *see, e. g., Brady*,

---

12. It is also worth noting that the English common law relied upon by the Court in *Bram* apparently did not contain an absolute prohibition of confessions based upon promises, al-

though the general concept was often applied with vigor. Dix, *Mistake, Ignorance, Expectation of Benefit, and the Modern Law of Confessions*, 1975 Wash.U.L.Q. 275, 279–80.

397 U.S. at 754, 90 S.Ct. 1463; *Bram*, 168 U.S. at 562–63, 18 S.Ct. 183; *Grades*, 398 F.2d at 410 n. 2; *Harris*, 301 F.Supp. at 997–98; (3) the promise or inducement is initiated by prosecuting officials as opposed to defendant or someone acting on his behalf,[13] *see, e. g., Shotwell Manufacturing Co. v. United States*, 371 U.S. 341, 352, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963); *Bram*, 168 U.S. at 564, 18 S.Ct. 183; *Williams v. Brewer*, 509 F.2d 227, 237 (8th Cir. 1974) (dissenting opinion); *Williams v. United States, supra*, 328 F.2d at 672; *Hunter, supra*, 372 F.Supp. at 302; (4) defendant is aware of his constitutional and other legal rights, *see, e. g., Grades*, 398 F.2d at 413; *Ferrara, supra*, 377 F.2d at 18; *Williams v. United States*, 328 F.2d at 673; *Turner, supra*, 423 F.Supp. at 961; *Hunter*, 372 F.Supp. at 298; (5) the potentially incriminating statement is part of an abortive plea bargain, *see, e. g., Hutto, supra*, 429 U.S. at 29–30, 97 S.Ct. 202; *Gunsby v. Wainwright*, 552 F.2d 127–28 (5th Cir. 1977); (6) the promises or inducements leading to the statement are fulfilled by prosecuting authorities, *see, e. g., United States v. Barker*, 542 F.2d 479, 484 n. 10 (8th Cir. 1976); *Hunter*, 504 F.2d at 1105; *Grades*, 398 F.2d at 411–13; *Harris*, 301 F.Supp. at 998–99; and (7) defendant is subjected to protracted interrogation or evidence appears on the record to show that coercion precludes the statement from being knowing and intelligent, *see, e. g., Haynes v. Washington*, 373 U.S. 503, 513–14, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Bram*, 168 U.S. at 561–62, 18 S.Ct. 183; *Grades*, 398 F.2d at 413; *Ferrara*, 377 F.2d at 18. This Court need not pass judgment on the validity of each of these individual considerations. Considered as a whole, the distinctions perceived in the case law lead ineluctably to the conclusion that the totality of circumstances must be examined in order to evaluate the voluntariness of an induced confession; adherence to a per se suppression doctrine is unsatisfactory.

Third, as a matter of policy, weighing the potential unreliability of confessions resulting from promissory inducements against the probable loss of probative pre-indictment confessions that would result from rigid adherence to a per se doctrine, the balance tips in favor of concluding that the entire factual circumstances of a case must be perused. The Court is fully cognizant of the extreme difficulty this determination may often entail, as well as the strong impression a confession may make upon a jury.[14] In doubtful cases, the appropriate course may well be to require suppression. But because *Bram* is not a per se rule of suppression,[15] the Court is under a duty to determine the voluntariness of a statement by evaluating the totality of the circumstances surrounding it. That voluntary and reliable confessions can be obtained at the pre-indictment stage justifies the searching evaluation that must be made.[16]

Under the facts of this case, it is concluded the statement made by defendant to prosecuting officials was voluntary. Defendant's will was not overborne and the statement was freely self-determined. The Court stresses that this determination is confined to the present context. The holding of this case is only that a pre-indictment statement knowingly made by a defendant aware of his constitutional rights after consultation with a family member and while

---

13. *See* Lederer, *The Law of Confessions—The Voluntariness Doctrine*, 74 Mil.L.Rev. 67, 82 (1976) (footnote omitted): "An accused who *initiates* a bargaining session with authorities by offering a statement in return for some concession will not normally be heard to complain that his statement was involuntary."

14. In this regard, the Court notes that even after the judicial determination of voluntariness is concluded, defendant will be afforded the opportunity should this case come to trial and a confession be introduced to demonstrate that the confession is unreliable. 18 U.S.C.

§ 3501(a); *see United States v. Barry*, 518 F.2d 342 (2d Cir. 1975). *See generally Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972) (in state courts, question of voluntariness need not necessarily be put to jury after judicial determination).

15. *Hunter, supra*, 372 F.Supp. at 301; n. 10 p. 633 *supra* and accompanying text.

16. For a state court decision reaching a similar conclusion, *see Pontow v. State*, 58 Wis.2d 135, 205 N.W.2d 775 (1973).

**638**

not in custody is not invalid because it was the result of a promise or inducement granted by prosecuting authorities upon the suggestion of defendant or his agent where no evidence of protracted interrogation or other coercion exists, the prosecuting officials fulfilled all promises made, those promises conferred a significant benefit upon defendant, and defendant retains the right to demonstrate at trial the statement's unreliability.[17]

Defendant's motion for reargument of his motion to suppress will be denied.

---

**17.** Given the purpose for which bail is supposed to be utilized, see *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951), the Court is somewhat troubled that a proposed bail reduction was a component of the agreed upon bargain for a statement from defendant. If discussions involving the prospect of rapid release from incarceration through a reduction in bail had not been initiated by defendant or his agent and, if defendant had not been free to exit the courthouse after bail was set and prior to the making of the incriminating statement, the subject whether a reduction in bail may be offered in exchange for a confession would merit extended treatment. In the context of the above circumstances, however, the Court is convinced that the promise of prosecution for a less serious offense constituted the overriding motivation for defendant to proffer a statement. For that reason, the propriety of using the attraction of immediate release via a bail reduction as a quid pro quo for a confession need not be addressed. *Cf. United States v. Brandon*, 467 F.2d 1008, 1011 (9th Cir. 1972) (confession not involuntary because of promise of release on own recognizance where at least part of confession preceded any promise).