Charles A. JOHNSON, Appellant,

v.

STATE of Alaska, Appellee.

No. 4462.

Court of Appeals of Alaska.

Feb. 19, 1981.

James D. Oswald, Asst. Public Defender, Anchorage, Brian Shortell, Public Defender, Anchorage, for appellant.

Peter A. Michalski, Asst. Atty. Gen., Dept. of Law, Office of Sp. Prosecutions and Appeals, Anchorage, Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Charles A. Johnson appeals from a conviction of grand larceny,[1] claiming that the superior court erred in denying his pretrial motion to suppress a confession which he made to the police. Johnson's principal argument is that his confession was involuntary because it was induced by police promises of leniency and that, therefore, constitutional due process was violated[2] by use of the confession as evidence against him. Johnson thus urges that we reverse his conviction.[3] In opposition, the State argues that it should consider his confession only if it independently determined that the confession was voluntary. After Johnson's appeal was filed, the Alaska Supreme Court squarely decided this issue, holding that the determination

---

1. Former A.S. 11.20.140.

2. U.S.Const. amend. V, and Alaska Const. art. 1, § 9.

3. Johnson has also argued on appeal that the trial court erred in refusing to instruct his jury

that we must affirm the conviction because evidence presented at the suppression hearing below supports the superior court's decision allowing the confession to be used.

We have concluded, however, that the superior court's ruling on this issue is inadequate to permit meaningful and accurate appellate review. Accordingly, we believe it is necessary to remand the case to the superior court for additional findings. Because our decision is based upon considerations which will generally apply to cases involving the issue of voluntariness of confessions, we shall explain in some detail the reasons which lead us to the conclusion that additional findings are necessary.

### I

At the suppression hearing below, testimony relating to the voluntariness of Johnson's confession was conflicting. Johnson was arrested on June 2, 1978, in connection with a burglary which had occurred at the Becklund residence in Anchorage (this burglary will hereinafter be referred to as the Becklund case). At the time of his arrest Johnson was suspected of involvement in a number of similar crimes. Several hours after his arrest, Johnson was interrogated by Officers Russell and Coffey of the Anchorage Police Department, and he confessed involvement in the Becklund case as well as a number of other recent crimes. At least this much was clearly established and uncontested.

The conflict in testimony developed over the nature and timing of police promises to forego prosecution against Johnson in return for his cooperation. Suppression hearing testimony produced three potentially conflicting accounts of police promises of leniency made during Johnson's interrogation. Johnson's version was that the police promised to forego all prosecution in exchange for full cooperation as to all criminal involvement on his part, including the Becklund case. Officer Russell's testimony differs in that he stated that at the outset of the interrogation, before Johnson had confession to any crime, Johnson was promised that he would not be prosecuted for crimes other than the Becklund case in exchange for his cooperation as to all criminal involvement on his part, including the Becklund case. Officer Coffey's testimony was that Johnson volunteered his confession as to the Becklund case at the outset of the interrogation, before any promises were made, and that only after Johnson confessed to the Becklund case was he offered immunity from prosecution for any further offenses to which he might confess.[4]

■ It is apparent, under the circumstances of this case, that resolution by the trial court of the conflicting accounts of the interrogation in all likelihood played a crucial and potentially determinative role in the court's ascertainment of the voluntariness of Johnson's confession to the Becklund case.[5] In ruling on the motion to

of voluntariness belongs exclusively to the court, not to the jury. *Stobaugh v. State*, 614 P.2d 767, 772–73 (Alaska 1980). We consider *Stobaugh* to be dispositive of Johnson's jury instruction argument.

4. Officer Coffey's testimony as to the precise timing of Johnson's confession to the Becklund case in relation to the promise not to prosecute was not entirely unequivocal, however, and it might be interpreted as consistent with Officer Russell's testimony that the promise of leniency was advanced before Johnson made any statements at all. The interpretation of Officer Coffey's testimony which is stated in the text is the one which is most favorable to the State.

5. As stated in *Bram v. United States*, 168 U.S. 532, 542–43, 18 S.Ct. 183, 186–187, 42 L.Ed. 568, 573 (1897):

A confession in order to be admissible must be free and voluntary; that is, it must not be extracted by any sort of threats, or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence . . . .

*Compare Stobaugh v. State, supra*, 614 P.2d at 771–72; *United States v. Ferrara*, 377 F.2d 16, 17 (2nd Cir. 1967); and *United States v. Williams*, 447 F.Supp. 631, 636–37 (D.Del.1973), with *S. B. v. State*, 614 P.2d 786, 788–89 (Alaska 1980); *Quick v. State*, 599 P.2d 712, 720 n. 12 (Alaska 1979); *Sprague v. State*, 590 P.2d 410, 413–14 (Alaska 1979); *United States v. Reynolds*, 532 F.2d 1150, 1156–60 (7th Cir. 1976); *State v. Tardiff*, 374 A.2d 598, 601 (Me. 1977); *State v. Setzer*, 20 Wash.App. 46, 579 P.2d 957 (1978).

suppress, however, the superior court made no express findings to resolve these divergent accounts of Johnson's interrogation, nor did it attempt to explain what it believed to have actually happened. The denial of Johnson's motion was summary in nature, with the court stating:

> I find that the State has met its burden of proof and find that Mr. Johnson did freely and voluntarily waive his *Miranda* rights and gave the confession which Officer Coffey testified concerning, and, therefore, the statement will not be suppressed.

Though the court's ruling makes amply clear its ultimate conclusion that Johnson's confession was voluntarily given, it unfortunately provides us with virtually no guidance as to how this conclusion was reached. Consequently, we have little information to serve as a basis for accurate review on appeal of the superior court's ruling.

## II

The State suggests that we solve the problem resulting from the absence of factual findings by simply interpreting the evidence in the record on appeal in the light most favorable to it. Under this theory, the State reasons that we should reject the testimony of Johnson and Officer Russell and rely exclusively on the account of the interrogation given by Officer Coffey. By taking this course we would in effect simply presume that the trial court found, as a factual matter, that Johnson confessed involvement in the Becklund case before any promises of leniency were made to him. While there is little doubt that adoption of the approach suggested by the State would quickly and efficiently dispose of Johnson's claims on appeal, this approach is not without its problems.

The State correctly points out that, in the absence of factual findings by the trial court, the Alaska Supreme Court has previously had occasion to adopt the rule that evidence in the record on appeal should be viewed in the light most favorable to the party prevailing below.[6] This rule has been applied in appeals raising the issue of competency to stand trial and in search and seizure cases. However, the State has cited no cases involving voluntariness of a confession, and we are aware of none, in which use of such a rule has been condoned as a suitable alternative to express trial court resolution of disputed facts.

■ In our view, the lack of case authority extending application of this rule to cases involving voluntariness of confessions is attributable neither to accident nor oversight. At least two compelling and related considerations lead us to believe that, where the voluntariness of a confession is raised as the issue on appeal, the expedient of reading the appellate record in the light most favorable to the state simply does not constitute an adequate or appropriate substitute for express resolution on the record by the trial court of all essential factual matters which are actually contested. The first of these two considerations centers upon the manner in which the issue of voluntariness must be decided by the trial court; the second, upon the standards by which trial court decisions as to voluntariness must be reviewed on appeal.

## III

Judicial determination of the voluntariness of confessions involves a unique process. This process has been described as requiring the trial court to apply a three-phased analysis. *Troyer v. State*, 614 P.2d 313, 318 (Alaska, 1980).[7] The court first

---

6. *See Phillips v. State*, 625 P.2d 816, 817 (Alaska, 1980); *Stumbaugh v. State*, 599 P.2d 166, 172 (Alaska 1979); *Gray v. State*, 596 P.2d 1154, 1158 n.18 (Alaska 1979); *McKinney v. State*, 566 P.2d 653, 659 (Alaska 1979); *Anthony v. State*, 521 P.2d 486, 492 (Alaska 1974). *See also* cases cited in *McKinney v. State, supra*, 566 P.2d at 659 n.9.

7. In *Troyer* the Alaska Supreme Court quoted with approval from *United States v. Brown*, 557 F.2d 541, 547–48 (6th Cir. 1977). *Brown*, in turn, relied upon the following language of Justice Frankfurter's opinion in *Culombe v. Connecticut*, 367 U.S. 568, 603, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037, 1058 (1961):

> The inquiry whether, in a particular case, a confession was voluntarily or involuntarily

determines what happened—whether a confession was made and what the basic circumstances surrounding it were. Next the court must decide by means of inference [8] what the effect of the factual circumstances upon the mental state of the accused actually was. And, finally, from its decision as to the accused's state of mind the court must draw its ultimate conclusion as to the voluntariness, in a legal sense, of his confession. *Culombe v. Connecticut, supra,* 367 U.S. at 603, 81 S.Ct. at 1879, 6 L.Ed.2d at 1058.

Because of the complexity of this analysis, the presumption that the trial court resolved the facts in favor of the prevailing party cannot be rationally applied as a substitute for explicit findings resolving contested factual issues.

The trial court is typically called upon in criminal cases to decide pretrial issues by use of a relatively straightforward two-phased analysis which consists, first, of determining relevant facts, and, second, of drawing legal conclusions directly therefrom. In appeals raising issues where this two-step analysis was employed by the trial court, the presumption that contested factual matters were resolved favorably to the prevailing party makes at least some sense. In such cases it is often logical to presume that contested factual issues were decided in favor of the prevailing party simply because the circumstances make it fairly clear

that the party would not have been allowed to prevail by the trial court had it construed the facts otherwise.

The logic of this presumption becomes attenuated in the context of decisions as to the voluntariness of confessions, which entail the more complex three-phased analysis. The injection of a third phase into the process of decision makes it entirely possible for the trial court to resolve the basic facts against the State while concluding, nonetheless, that the mental state of the accused was not sufficiently influenced by these facts to affect the voluntariness of his confession.[9] To proceed in the absence of factual findings in such a case by presuming that the trial court resolved the basic factual issues favorably to the State could fly in the face of the reality of the trial court's determination; appellate review based upon such a presumption would become wholly artificial. And, in such a case, if the trial court's decision as to the state of mind of the accused was the result of faulty logic or an incorrect application of the law, the inevitable effect of incorrectly presuming that the basic facts were decided in favor of the State would be to insulate the court's error from detection on appeal. Realistic reappraisal of the lower court's decision would in this manner be foreclosed, and the process of appeal would be reduced to a hollow and predetermined ritual.[10]

---

made involves, at the least, a three-phased process. First, there is the business of finding the crude historical facts, the external, 'phenomenological' occurrences and events surrounding the confession. Second, because the concept of 'voluntariness' is one which concerns a mental state, there is the imaginative recreation, largely inferential, of internal, 'psychological' fact. Third, there is the application to this psychological fact of standards for judgment informed by the larger legal conceptions ordinarily characterized as rules of law but which, also, comprehend both induction from, and anticipation of, factual circumstances.

**8.** As stated in *Culombe v. Connecticut, supra,* 367 U.S. at 604–05, 81 S.Ct. at 1880, 6 L.Ed.2d at 1059:

[T]he mental state of involuntariness upon which the due process question turns can never be affirmatively established other than circumstantially—that is, by inference ....

**9.** *See, e. g., Stobaugh v. State, supra; Quick v. State, supra. See also United States v. Brown, supra; United States v. Reynolds, supra; United States v. Ferrara, supra.*

**10.** There are facts intrinsic to this case which indicate the potential inaccuracy of presuming that the lower court decided the disputed facts in the light most favorable to the State. Remarks made by the court below during argument indicate that he rejected Johnson's version of the interrogation. But there is nothing to indicate that the court rejected the testimony of Officer Russell. Since Russell was Coffey's supervising officer, and since he testified that it was he, rather than Coffey, who promised Johnson to forego prosecution on all but the Becklund case in return for Johnson's full cooperation, the assumption that the superior court completely disregarded Russell's account of when this promise was given seems implausible. Furthermore, this is a case dealing with

## IV

A second, integrally related reason to reject the State's proposal to deal with the absence of express factual findings by reading the record on appeal in the light most favorable to it is the inconsistency of such an approach with the established scope of review in an appeal on the issue of voluntariness of a confession.

It is well settled that the scope of our review in a case such as this is twofold. As to purely factual determinations, the findings of the trial court will be reversed only if clearly erroneous. *Troyer v. State, supra,* 614 P.2d at 318, 320; *S. B. v. State, supra,* 614 P.2d at 790.[11] As to the determination of voluntariness, which encompasses the second and third phases in ruling on admissibility of a confession, our scope of review is significantly broader: "[O]n the voluntariness question, we have a duty to examine the entire record and make an independent determination."[12]

The State's argument that we should review the evidence in the record on appeal in the light most favorable to it is directly at odds with the concept of an independent determination of voluntariness based on an examination of the entire record. If the rule urged by the State were applied, our duty to examine the entire record would be rendered utterly superfluous, and our determination of voluntariness would be anything but independent.

The issue of voluntariness of a confession has been deemed to be of sufficient importance and complexity to require, under constitutional due process, that an express finding of voluntariness be made by the trial court before a confession can be presented to a jury.[13] Ultimately, failure to resolve contested factual issues in a clear and unambiguous manner diminishes the fairness and finality of the trial court's determination of voluntariness, just as it hinders appellate review. As stated by the United States Supreme Court in *Jackson v. Denno*:

> Expanded concepts of fairness in obtaining confessions have been accompanied by a correspondingly greater complexity in determining whether an accused's will has been overborne—facts are frequently disputed, questions of credibility are often crucial, and inferences to be drawn from established facts are often determinative .... Where pure factual considerations are an important ingredient, which is true in the usual case, appellate review in this Court is, as a practical matter, an inadequate substitute for a full and reliable determination of the voluntariness issue in the trial court and the trial court's determination, pro tanto, takes on an increasing finality. The procedures used in the trial court to arrive at its conclusions on the coercion issue progressively take on added significance as the actual measure of the protection afforded a defendant under the Due Process Clause of the Fourteenth Amendment against the use of involuntary confessions. These procedures must, therefore, be fully adequate to insure a reliable and

---

a confession allegedly tainted by an impermissible promise of leniency, and not one involving physical abuse or mental coercion. The question of what constitutes an impermissible promise, as opposed to a permissible comment or exhortation to tell the truth, is a troublesome one which frequently arises in such cases and which is capable of no clearly defined answer. The decision of the superior court in this case might well have been based on a determination that the promise, though actually made before Johnson confessed, was legally inadequate to constitute an impermissible inducement. *Compare S. B. v. State, supra,* 614 P.2d at 789–90, with *Quick v. State, supra,* 599 P.2d at 720 n.12.

11. Simply because we must accord great weight to the factual findings of the trial court does not, however, mean that we should conclusively presume a certain set of findings where, as here, there is an absence of actual findings.

12. *Troyer v. State, supra,* 614 P.2d at 318; *see also United States v. Brown, supra,* 557 F.2d at 547–48.

13. *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964); *Sims v. Georgia,* 385 U.S. 538, 543–44, 87 S.Ct. 639, 642–43, 17 L.Ed.2d 593, 598 (1967); *Stobaugh v. State, supra,* 614 P.2d at 772–73.

clear-cut determination of the voluntariness of the confession, including the resolution of disputed facts upon which the voluntariness issue may depend.[14]

## V

We are left with the question whether to proceed with disposition of this appeal in its present posture or to remand to the trial court for additional findings. Johnson urges that despite the lack of findings below we should proceed to decide his appeal, exercising our authority to make an independent review of the issue of voluntariness. However, we think that this approach would show too little regard for the significance of the trial court's role in making factual determinations in cases involving the voluntariness of confessions:

> Determination of what happened requires assessments of the relative credibility of witnesses whose stories, in cases involving claims of coercion, are frequently, if indeed not almost invariably, contradictory. That ascertainment belongs to the trier of facts before whom these witnesses actually appear, subject to whatever corrective power a State's appellate processes afford.[15]

Here, our own attempts to interpret and resolve conflicting testimony would obviously be a poor substitute for express and careful resolution of these matters by the trial court. Accordingly, a remand for additional findings will be required.

Because the reasons leading to our decision to remand are based upon considerations generally applicable to any case in which the voluntariness of a confession is in issue, and because these considerations have a great impact upon our ability to review such cases, we further conclude that our ruling should not be strictly limited to the case at hand.

■ On balance, we believe that the slight additional burden which might be experienced by trial courts as a result of the requirement of express resolution on the record of contested factual issues relating to the voluntariness of confessions is far outweighed by the significant and substantial benefits of such a requirement. Accordingly, we conclude that, in determining the voluntariness of confessions in future cases, trial courts must at a minimum expressly state their findings as to disputed facts essential to resolution of the issue.[16]

We must therefore remand this case with instructions that findings in conformity with the requirements of this opinion be entered by the judge who originally heard and determined the issue of voluntariness. Our remand is a limited one; the judgment below will remain intact and we will retain appellate jurisdiction pending the entry of additional findings as to disputed factual matters. However, under the circumstances of this case, we do not believe that the superior court should be narrowly restricted to entry of such findings if, in its discretion, reconsideration is warranted. A significant period of time has elapsed since testimony was originally heard by the court upon Johnson's motion to suppress his confession, and, for this reason, it may now be difficult for the court to formulate adequate findings.[17] Thus, the court may, in its discre-

**14.** 378 U.S. at 390–91, 84 S.Ct. at 1788, 12 L.Ed.2d at 923–24 (footnote omitted).

**15.** *Culombe v. Connecticut, supra,* 367 U.S. at 603, 81 S.Ct. at 1879, 6 L.Ed.2d at 1058.

**16.** In so holding, we do not mandate written opinions or extensive, formalistic elaborations on the part of the trial court. A brief statement of the trial court's findings concerning contested facts essential to its decision is all that is required. We do not hold that express resolution of disputed factual issues in cases involving voluntariness of confessions is required by due process, under either the United States or

Alaska Constitutions. Rather, our decision is more directly and practically based upon the fact that such findings are necessary to secure the right to appeal provided for under statute (A.S. 22.05.010(a), (b) and A.S. 22.07.020(d)) and rule (Alaska R.Crim.P. 32.1(a) and Alaska R.App.P. 202). *See also* Alaska Const. art. IV, § 2(a).

**17.** In this regard, although we do not require it, we strongly encourage the superior court to supplement its factual findings with a statement explaining the manner in which it has arrived at its conclusion on the ultimate issue of voluntariness. Because this issue involves a

tion, hold additional hearings and order any or all of the original witnesses to be recalled; the court may similarly permit additional testimony or other evidence, argument, or briefing on the voluntariness of Johnson's confession to be presented.[18]

This case is remanded to the superior court for additional proceedings consistent herewith.

mixed question of law and fact (see, e. g., Troyer v. State, supra, 614 P.2d at 318), and because it requires application of a complex, three-phased analysis, such additional findings would be of great assistance on appeal.

We similarly encourage, but do not require, trial courts to enter findings on the record with respect to disputed factual issues involved in pretrial motions other than those dealing with voluntariness of confessions. Findings of fact made as a part of the trial court's determination of typical pretrial criminal motions can significantly facilitate expeditious and accurate resolution of cases on appeal. Cf. Fed.R. Crim.P. 12(e) (requiring a statement on the record of essential findings by the court in the case of any pretrial criminal motion "[w]here factual issues are involved in determination of the motion").

18. We take account of the fact that a number of cases discussing confessions allegedly rendered involuntary by promises of leniency have been decided by the Alaska Supreme Court since Johnson's motion to suppress was con-

sidered and denied below. At the time of the superior court's ruling on Johnson's motion to suppress, virtually no Alaska case law had dealt with the issue of confessions induced by promises of leniency. Since then, the following Alaska Supreme Court decisions have touched upon this issue: S.B. v. State, supra; Stobaugh v. State, supra; Quick v. State, supra; and Sprague v. State, supra. At least two other intervening decisions, both of which involved claims of coerced confessions, are also of relevance to the issues here: Troyer v. Stae, supra; and Eben v. State, 599 P.2d 700, 709 & n.26 (Alaska 1979). For this reason, we also conclude that the superior court, by motion of either party or sua sponte, may choose to reconsider its original ruling. In leaving this option open to the superior court, we do not suggest in any manner that such reconsideration is necessarily called for or any determination by us that the court's original conclusion that Johnson's confession was voluntary is incorrect.