**Jimmy Clyde WILLIAMS, Appellant,**
v.
**UNITED STATES of America,**
**Appellee.**

**Paul Wayne HOWELL, Appellant,**
v.
**UNITED STATES of America,**
**Appellee.**

Nos. 20258, 20765.

United States Court of Appeals
Fifth Circuit.

March 5, 1964.

Gewin, Circuit Judge, dissented.

Richard G. Williams, Fort Worth, Tex., Gordon MacDowell, Dallas, Tex., for J. C. Williams.

Gordon MacDowell, Dallas, Tex., for P. W. Howell.

Barefoot Sanders, U. S. Atty., T. Gary Cole, Jr., Asst. U. S. Atty., Fort Worth, Tex., for appellee.

Before TUTTLE, Chief Judge, and BROWN and GEWIN, Circuit Judges.

TUTTLE, Chief Judge.

These two cases arising out of the same trial and consolidated for argument and submission to this Court attack the judgment of the trial court on the ground that testimony of an extrajudicial confession of guilt was improperly admitted in evidence.

The appellants, together with a third person who has not appealed, were convicted of robbing a contract post office in a small grocery store in Fort Worth, Texas. They were picked up in California for speeding, questioned and taken into custody as suspects for having committed an assault on a police officer. While in custody their effects were searched and rolls of stamps were found. A Postal Inspector was called and he thereafter started questioning the appellants.

As found by the trial court upon a preliminary motion to suppress a written confession, the appellants gave oral statements to the Postal Inspector. These statements were made when the Inspector discussed with them the provisions of Rule 20, F.R.Cr.Proc. which permits an accused person arrested in a district other than that in which the crime was committed to have the case transferred to the district of his arrest if he elects to plead guilty. Thereafter, the officer persuaded them to sign a full confession upon his promise that he would try to obtain dismissal of state charges against them. Although not dealt with in the trial court's order, the officer testified at the hearing on the motion that while he discussed the provisions of Rule 20 with them he made no promises and did not urge them to plead under it. However, on cross examination he testified as follows:

"Question: What reason did you give them about pleading guilty and taking a mandatory 25 year sentence?

"Answer: They didn't want to go back to Texas. Mr. Mitchell and Mr. Williams were afraid the government might drop the charges and the state might pick them up and follow through on an habitual criminal charge [carrying a life sentence]."

The court ruled out the written confession, saying:

"I will sustain the motion and the objection to the written statement signed on July 23rd on the basis that it was induced by a promise on

the part of the postal inspector that he would try to get the state court cases dismissed, and on that ground alone."

After the men were brought back to Fort Worth and were being held in the county jail, another Postal Inspector visited them and talked to them. He testified at the hearing of the motion to suppress that after he warned them that they need not make any statement, that if they did the statement could be used against them, and that they could consult a lawyer, they made a full oral confession. He said that he called to see Howell, but Howell would not talk without the others being present. He then testified that with all three present, Howell did most of the talking and told in detail about the commission of the robbery. The three defendants did not take the stand, but they testified on the motion to suppress that they had made no admission at this session.

When the Postal Inspector was permitted to testify at the trial, detailing the admission he said had been made to him, counsel objected on the ground that the statement could not be received in evidence because of the inducements previously given to obtain the written confession.

The meeting between the three men and the Postal Inspector in Fort Worth was approximately one month after their signed confession had been taken in California.

The trial court gave a proper charge to the jury touching on the need for voluntariness of the admissions before they could be considered by the jury. Of course, the jury had not heard the testimony of the Postal Inspector who had stated that he made promises to the accused persons before they signed the confession.

■ The appellants here charge that the trial court's overruling of the objection to the admission of the later oral confession was clearly erroneous. They say that the overhanging threat of the "state court cases" and the danger of a

Texas prosecution was a continuing one and that it was just as much to their interest to cooperate with the Postal Inspector in August by giving a confession as it had been in July. We agree.

There can be no doubt about the rule that a confession made because of an inducement of the kind found by the trial court to have been offered in the first instance is as inadmissible as if forced by compulsion, threats or fear. The United States does not take issue with this proposition. In Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568, cited recently in Shotwell Mfg. Co. v. United States, 371 U.S. 341, 347, 83 S.Ct. 448, 453, 9 L.Ed.2d 357, the Supreme Court said:

> "A confession, in order to be admissible, must be free and voluntary: that is, * * * not * * * obtained by any direct or implied promises, however slight * * *."

Neither does the United States dispute the contention made here by the appellants that where a confession has been obtained by means of inducement, the burden is on the prosecution to show that the operating force of the inducement has been brought to an end before any subsequent confession may be received. This rule is stated by Wigmore as follows:

> "The general principle is universally conceded that the *subsequent end* of an improper inducement *must be shown*, i. e., it is assumed to have continued until the contrary is shown." 3 Wigmore, Evidence 375 § 855 (3rd ed. 1940).

A much more difficult issue is presented when the court must determine whether, in fact, the inducement has run its course as a motivating cause when a later confession is obtained.

In the case of United States v. Bayer, 331 U.S. 532, 67 S.Ct. 1394, 91 L.Ed. 1654, the Supreme Court reaffirmed the proposition that, although it is difficult to visualize a case in which the motivating facts that produced the initial illegal confession are no longer a moving consideration entering into the

giving of a subsequent admission, there are such cases. The Court in that case found that the lapse of a period of six months, coupled with the fact that the accused was not in custody other than being restricted to an army base, and the fact that he had had a number of interviews with the Federal Bureau of Investigation, in which he offered to fill in the details of his earlier confession, permitted a holding that the second confession was not infected with the weaknesses of the first.

Here the chronology is: (1) There were conversations with the three defendants in California shortly after it was believed that the United States might be interested in the cases, at which time the federal agents discussed with the defendants their rights under Rule 20. The trial court held, on hearing the preliminary motion to suppress, that there had been no inducement offered at that time, but that the defendants made a substantially complete statement of their implication in the robbery. (2) All three defendants signed a written confession, which the trial court held was inadmissible because it had been induced by promises on the part of the inspector that he would attempt to have the state cases dismissed. (3) On the trial a strong case was built up against the defendants by certain eye witnesses at the scene of the robbery. (4) The oral statements made in California by Williams and Mitchell (who has not appealed) were testified to by the Postal Inspector, Stokes. (5) Postal Inspector Powell then was permitted to testify to the oral admissions made by all three defendants after the men had been returned to Texas and were in the Fort Worth jail.

It is to be noted that there was no testimony on the trial itself that Howell had ever made an oral statement in California prior to the signed confession. Therefore, the testimony given by Agent Powell of the oral admissions made in Fort Worth was the only proof of admission or confession by Howell. Thus, it may be quite significant that when Powell sought an interview he sought Howell alone, because apparently, either because of the inadequacy of the proof or the unavailability of the witness, there was no proof of an admission by Howell except the written confession. It is further significant that when Powell was cross examined on the trial, he admitted that the three defendants, when talking to him in the Fort Worth jail complained of having been tricked into signing the confession in California (the confession subsequently ruled out by the trial court on the motion to suppress). It is to be noted that therefore Powell was seeking to bolster a confession which was subsequently ruled out and also to obtain a confession which apparently the government needed against Howell if the written confession should be ruled out, whereas the defendants were all under the impression that they had already given a written confession that was to be used against them.

Under this state of facts we find no substantial effort by the government to carry the burden of showing that the circumstances which made the written confession inadmissible were no longer the motivating factors in producing the oral admissions given by the defendants in the Fort Worth jail. There is nothing to show that the promise of assistance in preventing the prosecution of these defendants by the State of California, and the avoidance as to two of them of a Texas prosecution under the habitual criminal act were not still in the forefront of their minds when they made the oral admissions after being returned to the Fort Worth jail. It is certain, at least, that they were back in Texas where they could readily be prosecuted under the Texas law if the federal government saw fit to abandon the prosecution. As quoted above, one government witness testified that it was the fear of the Texas prosecution that motivated Williams and Mitchell in giving the original written confession.

We think, however, that the most important fact touching on the validity of the oral admissions made after the

men had been returned to Fort Worth, was their knowledge that they had already signed a written confession in full, and their lack of knowledge that this confession could not be used against them. Having already signed such a confession, (albeit, as they contended, by reason of being deceived into doing so) they gave no indication that they knew that this confession could be suppressed. Under these circumstances what would they gain by failing at this late date to refuse to cooperate fully with the prosecutor to the extent of repeating orally again what they had already said in writing? See 2 Wharton, Criminal Evidence, 63, Sec. 359 (12 ed. 1955), and People v. Jones, 24 Cal.2d 601, 150 P.2d 801, touching on the requirement that a prisoner should be informed that a prior invalid confession could not be used against him before his subsequent confession can be considered valid. We have no doubt that under the circumstances here present there was a burden on the government, before the acceptance of further oral admission or confession from the accused, to inform them that the original written confessions would not be offered or used against them. It is plain from the evidence here that the defendants were complaining of the existence of this outstanding written confession. Thus it is clear that the government agent did not tell them of its invalidity *or the fact that the written confession would not be offered or used against them.* Thus there would be no warrant in having a further finding of fact with respect to this point.

We conclude, therefore, that a new trial must be granted, at which the oral admissions obtained in the Fort Worth jail can not be used.

We have carefully considered the motion of the government to dismiss Howell's appeal on the ground that he failed to file his notice of appeal within the proper time. We find that there was a sufficient compliance with the rule to satisfy the requirement.

The judgments are reversed and the cases are remanded for further proceedings not inconsistent with this opinion.

The Court takes this means to express its appreciation to counsel who were appointed to represent the appellants on this appeal.

GEWIN, Circuit Judge (dissenting).

The majority opinion has misconstrued certain facts, failed to notice other important facts and has not made a correct application of the law to the pertinent facts involved.

A careful, cautious and experienced trial judge ruled benevolently and generously with respect to certain confessions involving 3 criminals who are not novices in criminal activities, and who are not strangers to the courtroom or criminal procedure. Out of an abundance of caution the District Judge "leaned backwards" and excluded a written confession as to the two appellants and their associate (Mitchell, who has not appealed), and excluded an oral confession of Howell made prior to the written confession.

This case is a perfect illustration of the awkward position in which a trial judge is often placed, and the intolerable burden he must bear in undertaking to conduct the trial of criminals who are crafty, ingenious, irresponsible, unprincipled and will resort to any kind of tactics to delay final judgment and avoid the sentence of the law.

On a quiet June evening in 1962 these two appellants accompanied by Mitchell entered a small grocery store in Fort Worth, Texas, carrying guns. A part of the grocery store was used as a United States Post Office Substation. Three employees in the establishment were forced to lie face down in the rear of the store while the 3 criminals looted the cash registers in the store, and the Post Office safe and cash box. As they were leaving, the owner arrived and he too was made to lie down on the floor and his billfold was removed from his pocket. They escaped to California where they were apprehended for other law violations. The Appellant Howell had formerly been convicted of burglary and served a sentence in the state penitentiary at

Huntsville, Texas; and Williams had been convicted of numerous burglaries in Florida and had served time in state penitentiaries there.

All 3 of the criminals made confessions at various times. Mitchell and Williams made confessions to state officials in California and freely discussed the crime. They also made oral confessions to Inspector Stokes prior to any alleged inducement. In California, Mitchell and Williams were confined in one place and Howell in another. Before the written confession in question, Howell also made an oral confession to Postal Inspector Stokes. The written confession, which was suppressed and excluded from the evidence, was made to Postal Inspector Stokes by all 3 of the offenders on July 23 in the State of California. At the time the 3 defendants planned to enter pleas of guilty pursuant to F.R.Crim.P. 20. This plan was abandoned when one of the defendants objected to the use of the word "knowingly" in the information, because as he contended, he did not know a Post Office was located in the grocery store.

After the written confession on July 23, the defendants were returned to Texas for trial in the U. S. District Court for the Northern District of Texas. On August 28, slightly over 5 weeks after the written confession which was suppressed and excluded from evidence, the defendants made an oral confession. This oral confession was made at a different time, a different location, and to a different person. The oral confession was made to Postal Inspector Powell in Fort Worth, Texas. The appellants were fully advised of their rights before they made such oral confession, were told that they were entitled to counsel, that they had a perfect right to remain silent, and that any statement made by them could be used against them. At the time of the oral confession, the "state charges" in California had been removed and the defendants had long since been released from the custody of the State of California. On the motion to suppress it was claimed that the written confession given in California was induced by a promise of Postal Inspector Stokes to have the defendants released from state prosecution in California. Although the defendants had some misgivings about returning to Texas as shown by the quoted statement in the majority opinion, that factor was not involved in any sense when the Postal Inspector talked with them in California. Only California charges were involved at the time; and insofar as the record discloses, the State of Texas never did present any charges against any of the defendants.

The appellants employed skillful counsel who filed a motion to suppress the written confession and " * * * all other statements given by the defendants since their arrest in California." A full day's hearing was conducted on the motion to suppress the written confession. It was claimed by the defendants that the written confession had been unlawfully induced. The defendants were given complete immunity and testified at length. When the defendants rested on the motion and stated to the court that none of them had any further testimony, District Attorney Hughes, in the highest traditions of the legal profession, and with unusual candor and fairness, voluntarily raised the question that the defendants' motion went not only to the written confession but to " * * * all other statements given by the defendants since their arrest in California." The District Attorney then stated he wished to clarify a matter and inquired of the defendants whether they were resting " * * * as to every statement they intend to contest under the allegations in this motion." The District Attorney then informed the defendants and their counsel that there was another oral statement upon which the Government would rely at the trial. He then informed the defendants and their counsel of the oral confession upon which the Government would rely. He stated, "I am not trying to run their business for them, I just want to be sure there is no misunderstanding of what has been covered by this motion * * *." The court con-

cluded that it was his judgment that the allegations of the motion were broad enough " * * * to cover any kind of statement." Both the court and the District Attorney made it crystal clear to the defendants and their counsel that the Government would rely on an oral confession made to Inspector Powell in Fort Worth, Texas, on August 28. It was understood by the defendants and their counsel that the court wished to hear any objections the defendants claimed as to the oral confession. As the District Attorney said in open court, "I am trying to keep from misleading anyone, and I am telling them that there is another statement, and if they want to hash it out, we can do it now, since we have taken a day on this business." The court forthwith explained to the defendants and their counsel that ample time would be given to them to go into the matter, and both the court and the District Attorney expressed the willingness to take whatever time was necessary " * * * to get to the truth * * *."

At this stage of the proceedings, defense counsel stated that they did not know of the other statement. The court gave defense counsel ample time and suggested that they confer with the defendants about the oral confession, and counsel did confer with them. Thereafter, the Government placed Inspector Powell on the witness stand and disclosed fully and in minute detail the oral confessions made by the defendants to Inspector Powell. Thereafter, each of the defendants took the witness stand with full immunity, and categorically denied that any of them had made any such statements to Inspector Powell. They did not claim inducement, or that they were misled, coerced, or persuaded to make the oral confession. They relied entirely on a flat denial. After repeated caution by the court, full disclosure by the District Attorney, and a full exploration of all the details and facts, the court ruled that there was no evidence whatever to show any inducement, coercion, duress, or any other fact which would render unlawful the oral confession given to Inspector Powell at Fort Worth on August 28.

After the foregoing proceedings, the case came on for trial. In exact accordance with the previous statements of the District Attorney upon the hearing to suppress, the Government offered the oral confession made to Inspector Powell. The defendants rendered the following objection:

"MR. BIDDLE: Just for the record, I would like to renew our objection to this testimony, the oral conversation while the defendant was under arrest, and after the previous matters in California had already been concluded; just to make the record straight."

In view of the fact that the written confession had been suppressed, the Government was forbidden to make any reference to it. Only the defendants had the opportunity and the right to undertake a showing that the oral confession made to Inspector Powell on August 28 was induced by the written confession given to Inspector Stokes in California. They elected not to do so. At this time the defendants elected not to take the stand. As the matter was presented to the trial court therefore, Inspector Powell had testified as to a confession which the defendants on the motion to suppress had denied and said they had not made.

When the case was submitted to the jury, the trial court gave a lucid and proper instruction on the requirement of the law that before a confession could be considered, it must be found to have been made voluntarily and free from unlawful coercion and duress. There was no objection to the final charge of the court on the subject.

In effect, the majority opinion improperly substitutes the judgment of this court for that of the trial court, in total disregard of the pertinent facts before the trial judge and the discretion lodged in the trial judge in determining the admissibility of confessions. In effect the majority has found that the trial court

should have ruled the confessions to be involuntary as a matter of law. In Lyons v. Oklahoma, (1943) 322 U.S. 596, 64 S. Ct. 1208, 88 L.Ed. 1481, the Supreme Court in affirming the admissibility of an oral confession given only 12 hours after a prior confession which was unlawfully induced, stated the rule as follows:

" * * * Here improper methods were used to obtain a confession, but that confession was not used at the trial. Later, in another place and with different persons present, the accused again told the facts of the crime. Involuntary confessions, of course, may be given either simultaneously with or subsequently to unlawful pressures, force or threats. The question of whether those confessions subsequently given are themselves voluntary depends on the inferences as to the continuing effect of the coercive practices which may fairly be drawn from the surrounding circumstances."

The proper rule of review as to whether a confession is voluntary was stated by Judge Learned Hand in United States v. Gottfried, 2 Cir. 1948, 165 F.2d 360:

"Whether a confession is voluntary depends upon the facts that surround it, and the judge's decision is final as to its competence except in those cases, of which certainly this is not one, in which his finding of fact is *plainly untenable*." (Emphasis added.)

The Supreme Court in Lyons, supra, clearly expresses the rule in the following language:

" * * * But where there is a dispute as to whether the acts which are charged to be coercive actually occurred, or where different inferences may fairly be drawn from admitted facts, the trial judge and the jury are not only in a better position to appraise the truth or falsity of the defendant's assertions from the demeanor of the witnesses but the legal duty is upon them to make the decision."

To the same effect is Mangum v. United States, 9 Cir. 1923, 289 F. 213:

" * * * But where on the trial of a criminal case a confession of the defendant is offered in evidence it becomes necessary for the trial court to ascertain and determine as a preliminary question of fact, whether it was freely and voluntarily made, and whether the previous undue influence, if any, had ceased to operate upon the mind of the defendant. In doing so, the court is necessarily vested with *a very large discretion, which will not be disturbed on appeal, unless a clear abuse thereof is shown*." (Emphasis added.)

In my view, both the District Attorney and the trial judge should be commended for the fair, patient, considerate and careful manner in which these defendants were tried and convicted. The case should be affirmed.

I respectfully dissent.