David R. STOBAUGH, Appellant,

v.

STATE of Alaska, Appellee.

No. 3729.

Supreme Court of Alaska.

July 18, 1980.

G. R. Eschbacher, Anchorage, for appellant.

Gayle A. Horetski, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, BOOCHEVER and MATTHEWS, JJ., and COOKE, Superior Court Judge.

CONNOR, Justice.

On April 29, 1976, state troopers acting upon probable cause arrested David Stobaugh for the burglary of the home of his aunt and uncle. At the time of his arrest Stobaugh was under the influence of heroin and, although fully and adequately informed of his *Miranda* rights, he made several incriminating statements which were later used against him at trial.[1]

On May 13, 1976, Stobaugh was indicted by a grand jury. Several months later appellant, with the assistance of counsel, entered into an agreement with the District Attorney. In return for deferred prosecution, appellant agreed to make an in camera, tape recorded statement concerning his involvement in the burglary and to complete a two year rehabilitation program. This agreement was approved by the superior court on November 26, 1976. In its order the court specifically stated that if appellant violated any of the terms of the agreement the state would have nineteen days in which to institute prosecution.[2]

After approximately three months in the rehabilitative program, appellant elected to withdraw and seek prosecution on the charge for which he was indicted. On January 28, 1977, the state moved to reinstate prosecution and requested an immediate trial date. The case was set for trial on February 14, 1977, but due to various procedural delays which we will presently discuss the trial did not begin until April 12, 1977. From his subsequent conviction for burglary Stobaugh now appeals.

Appellant assigns four grounds of reversible error directed to the merits of the case. An additional point on appeal is directed to sentencing. We find no merit in any of these contentions and therefore affirm appellant's conviction and sentence.

## I.

Appellant first asserts that the case should have been dismissed for failure to comply with Criminal Rule 45. That rule requires the State to institute criminal prosecution of an accused within 120 days of the date of arrest, arraignment or service of the complaint, whichever is first. If the State fails to prosecute within this time limit the case must be dismissed with prejudice. Alaska Criminal Rule 45(g). Rule 45 is not, however, absolute. For computational purposes some periods of time are expressly excluded from the 120 day calculation. Alaska R.Crim.P. 45(d). The question presented here for review is to what extent the delays in the proceedings below were attributable to actions falling within this excluded category.

It is undisputed that when the State reinstated prosecution on January 28, 1977, nineteen days remained in which to try the appellant. Nor is it disputed that the date set for trial, February 14, 1977, was within that limit. On February 4, 1977, however, appellant's attorney filed a motion to withdraw as counsel. This motion was denied on February 8, 1977, whereupon immediate review was sought in this court. On February 10, 1977, this court stayed the proceedings below pending review and on March 2, 1977, we granted petitioner's request to

---

1. Either contemporaneous with or after being given *Miranda* warnings, defendant made statements to the effect that he had "screwed up good" but that it was only ten years of his life and that the stocks and bonds taken in the robbery were probably still around and could be recovered.

2. This proviso was designed to satisfy the so-called four month rule which requires that a defendant be tried within 120 days of the date of arrest, initial arraignment or charge. Alaska R.Crim.P. 45. See discussion, *infra*.

withdraw. New counsel was appointed on March 7, 1977 and, following a continuance to allow adequate preparation, appellant was finally tried on April 12, 1977.

No extended discussion is required to show that the foregoing delays were properly excluded from the 120 day computation. Rule 45(d) provides in pertinent part:

"The following periods shall be excluded in computing the time for trial:

(1) The period of delay resulting from other proceedings concerning the defendant

. . . . .

(2) The period of delay resulting from an adjournment or continuance granted at the timely request or with the consent of the defendant and his counsel."

The delay occasioned by the withdrawal of appellant's first counsel and appointment of new representation clearly falls within the exclusion provided for in Rule 45(d)(1). It is equally clear that the continuance requested by appellant's new counsel to allow adequate time to prepare falls within the exclusion provided for in Rule 45(d)(2). *Henson v. State*, 576 P.2d 1352, 1356 (Alaska 1978).

■ We find no merit in appellant's argument that he should not be charged with delays over which he had no control. Rule 45 makes no such distinction; nor do we think such a distinction is warranted. The primary purpose of Rule 45 is "to insure protection of the constitutional right to a speedy trial and advance the public interest in swift justice." *Ahmaogak v. State*, 595 P.2d 985, 987 (Alaska 1979), *quoting Peterson v. State*, 562 P.2d 1350, 1358 (Alaska 1977). As we noted in *Glasgow v. State*, 469 P.2d 682, 685 (Alaska 1970):

"The right to a speedy trial fulfills several purposes. One is to prevent harming the defendant by a weakening of his case as evidence and memory of witnesses grow stale with the passage of time. An-

other is to prevent prolonged pre-trial incarceration and infliction of anxiety on the accused because of long pending charges . . . .. Lastly it is recognized that harm is inflicted on an accused who is serving a sentence in another jurisdiction if he is not promptly allowed to be tried in the jurisdiction where charges are still pending."

To secure these ends, Rule 45 requires the state to exercise due diligence in prosecuting criminal cases.

■ In the present case, appellant makes no claims of prejudice as a result of delay, nor do we find apparent any of the factors discussed in *Glasgow*. If anything, the delays occasioned by appellant's change of counsel were necessary to afford appellant the full measure of his constitutional rights. Moreover, the State had no control over and could not have prevented the delays which took place in this case. Under the circumstances we reject appellant's contention that such delays should be included in the 120 day computation period.

Accordingly, we find that the only time properly included in the computation was that period between January 28, 1977, the date upon which the State reinstituted prosecution, and February 4, 1977, when appellant's first attorney filed a motion to withdraw as counsel. That left twelve days in which to try defendant.[3] There was, therefore, no error.

## II.

Appellant next contends that the trial court erred in failing to specifically find that appellant's confession to Officer Jarrett was involuntary as a matter of law. Appellant argues that no statement is voluntary unless it is the product of a rational mind and a free will, and that by failing to consider whether Stobaugh's heroin induced euphoria deprived him of his rational mind and free will the court committed error.

---

**3.** Since Rule 45 does not specifically provide otherwise, the running of time must be calculated according to Rule 40(a). *Nickels v. State*, 545 P.2d 163, 165 (Alaska 1976). Accordingly,

dates which toll the running of time are counted while dates which begin or restart the running of time are not. *Deacon v. State*, 575 P.2d 1225, 1230 n.12 (Alaska 1978).

■ Before a self-incriminating statement may be introduced into evidence it must be shown, by a preponderance of the evidence, that it was voluntarily made. *Schade v. State*, 512 P.2d 907, 917 (Alaska 1973). This determination must be made with reference to "the totality of the circumstances surrounding the statement." *Id.* at 916. We think the findings of the court below satisfied that requirement.

■ Although the court did not explicitly find that appellant's statements were the product of a rational mind and a free will, it did conclude that at the time the statements were made Stobaugh was "oriented as to time, place and circumstances, knew with whom he was speaking and [was] aware of the circumstances that gave rise to the speech." While the court could not determine whether Stobaugh would have made the statements had he not been under the influence of narcotics, it did find that the statements were not the product of duress or coercion on the part of the police. We think these findings were sufficient to determine voluntariness.

Appellant, relying on *Sims v. Georgia*, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967), urges us to hold that failure of the trial court to explicitly state on the record its findings that the statements were voluntary requires automatic reversal. *Sims*, however, does not go that far. In rendering its decision the *Sims* court stated:

"Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity."

*Id.* at 544, 87 S.Ct. at 643, 17 L.Ed.2d at 598.

While the court did not explicitly state that it found Stobaugh's statements to have been voluntary, all the requisite elements of voluntariness appear from the record: a rational mind which was not the product of

duress or coercion. We, therefore, find no error.

### III.

■ Appellant next claims that his in camera confession was induced by a promise of deferred prosecution and was thus involuntary as a matter of law. If appellant's contention is correct then it was error to admit the confession and we must reverse.[4]

We begin with the United States Supreme Court's decision in *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). There the court said:

"But a confession, in order to be admissible . . . must not be extracted by any sort of threats or violence, *nor obtained by any direct or implied promises, however slight*, nor by the exertion of any improper influence . . . . A confession can never be received in evidence where the prisoner has been influenced by any threat or promise; for the law cannot measure the force of the influence used or decide upon its effect upon the mind of the prisoner, and therefore excludes the declaration if any degree of influence has been exerted." [emphasis added]

*Id.* at 542–43, 18 S.Ct. at 187, 42 L.Ed. at 573, *quoting* 3 Russell on Crimes, 478 (6th ed.). *See also, Malloy v. Hogan*, 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653, 659 (1964); *U. S. v. Powe*, 591 F.2d 833, 836 n. 1 (D.C.Cir.1978).

■ Although *Bram* retains validity, the emphasized language above is not dispositive. As the court noted in *United States v. Ferrara*, 377 F.2d 16, 17 (2d Cir. 1967), *cert. denied*, 389 U.S. 908, 88 S.Ct. 225, 19 L.Ed.2d 225 (1967):

"That language has never been applied with the wooden literalness urged upon

---

4. We conclude that Stobaugh's in camera confession did not constitute a plea of guilty or nolo contendere within the meaning of Criminal Rule 11(c) and therefore do not consider appellant's argument that failure to comply with that rule was error. There is, however, a constitutional requirement that any waiver of

the privilege against self-incrimination be knowing, intelligent and with sufficient awareness of relevant circumstances and likely consequences. *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). We find that this requirement was met here.

us by appellant. The Supreme Court has consistently made clear that the test of voluntariness is whether an examination of all the circumstances discloses that the conduct of law enforcement was such as to overbear [the defendant's] will to resist and bring about confessions not freely self determined." [citations omitted].

We therefore reject a per se rule which would condemn any incriminating statement obtained by means of a promissory inducement. In so doing, we approve the well reasoned conclusions of Judge Schwartz in *United States v. Williams*, 447 F.Supp. 631, 636–37 (D.Del.1978). First, the facts of *Bram* do not require such a per se rule. Second, subsequent cases demonstrate that factual nuances may be very important in determining voluntariness. Third, the probable loss of reliable and probative confessions that would result from rigid adherence to a per se rule militates in favor of examining all the circumstances surrounding a promise-induced confession.

Viewing the totality of the circumstances, we cannot conclude that Stobaugh's confession was made under such "obviously coercive circumstances" to make his statement involuntary as a matter of law. Stobaugh made an informed decision to enter into an agreement which was clearly in his best interests.[5] He was not subject to coercive tactics and was advised by counsel at every step of the way. In another context we, as well as the United States Supreme Court, have held that mere entry of a guilty plea because of the possibility of a more favorable sentence is not enough by itself to invalidate the plea.

We refuse to hold that simply because a defendant is presented with an appealing bargain his will is overborne and his subsequent confession is involuntary.[6]

■ Although we can find no constitutional error in the instant case, we expressly disapprove the practice of inducing a confession by the promise of deferred prosecution. In cases such as the present, virtually the same result can be achieved through a suspended imposition of sentence. Moreover, since a guilty plea given in return for a suspended imposition of sentence must be made in accordance with Criminal Rule 11, the defendant's constitutional rights are fully protected. We, therefore, direct that in the future the trial courts shall not accept confessions in return for deferred prosecution, but shall instead proceed by means of the established suspended imposition of sentence procedure.

## IV.

■ Appellant contends that the court erred in failing to allow the jury to consider the voluntariness of his confession. In instructing the jury to consider only the trustworthiness of defendant's statement the court below followed the so-called orthodox rule under which the trial judge solely and finally determines the voluntariness of a confession. Appellant contends that the trial court should have applied the Massachusetts rule. Under that rule the trial judge must still fully and independently determine the voluntariness of a confession; after such determination, however, the question may then be submitted to the jury for consideration along with its evalua-

5. The trial judge characterized defendant's side of the deferred prosecution agreement as "almost beyond belief it was so good."

6. *See Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *Thompson v. State*, 426 P.2d 995 (Alaska 1967). In holding as we do, we are not unmindful of dicta or implications in several cases that where a confession is directly linked to a bargain, in the sense of a quid pro quo, the confession is involuntary and must be excluded. *See Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194, 197 (1976); *Gunsby v. Wainwright*, 552 F.2d 127 (9th Cir. 1977) (case re-

manded for determination of whether confession was part of plea bargain); *United States v. Williams*, 447 F.Supp. 631 (D.Del.1978); *Hunter v. Swenson*, 372 F.Supp. 287, 300 (W.D.Mo. 1974) (stating in dicta that Fifth Amendment prohibits confessions "compelled" by promises of leniency), aff'd, 504 F.2d 1104 (8th Cir. 1974) (expressing doubt that actual compulsion is required to invalidate a confession but finding it unnecessary to decide the question), *cert. denied*, 420 U.S. 980, 95 S.Ct. 1410, 43 L.Ed.2d 662 (1975). We think, under the circumstances of this case, these decisions are unpersuasive.

tion of the statement's trustworthiness.[7] The question is one of first impression. We have not yet delineated the proper roles of judge and jury in considering the voluntariness of a defendant's confession.[8]

■ We hold that the orthodox rule is the applicable rule in the State of Alaska. We reach this conclusion for practical reasons. We see no useful purpose in having the jury cover the same ground over which the judge has so recently traversed. The trial judge is more familiar with the law and more likely to be able to disregard emotional considerations in determining whether defendant's statement was freely given. In contrast, juries are more prone to interject subjective considerations. As the Supreme Court said in *Jackson v. Denno*, 378 U.S. 368, 382, 84 S.Ct. 1774, 1783, 12 L.Ed.2d 908, 918 (1964):

"The jury however, may find it difficult to understand the policy forbidding reliance upon a coerced, but true, confession . . . . That a trustworthy confession must also be voluntary if it is to be used at all, generates natural and potent pressure to find it voluntary. Otherwise the guilty defendant goes free."

This being the case, it is highly unlikely that in any case where the trial judge has concluded that a confession was voluntary, the jury would reach an opposite result. We think whatever slight advantage might be derived from adoption of the Massachusetts rule, it does not justify such duplication of effort. We, therefore, find no error.

### V.

Following his conviction appellant was sentenced to seven years in prison. We have previously held that prison terms should not exceed five years except in the case of serious offenses, dangerous offenders or professional criminals. *Salazar v. State*, 562 P.2d 694, 697 (Alaska 1977); *Donlun v. State*, 527 P.2d 472, 475 (Alaska 1974). Contending that he falls within none of these categories, appellant argues that his sentence was excessive. We disagree.

In sentence appeals we must examine the record and determine "in light of the nature of the crime, the defendant's character, and the need for protecting the public" whether "the trial court was clearly mistaken in imposing the sentence it did." *Walton v. State*, 568 P.2d 981, 983 (Alaska 1977); *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970).

Appellant is 24 years old. Prior to his burglary conviction in this case, appellant had been convicted of three misdemeanors—contributing to the delinquency of a minor (1970), forgery (1971), and malicious destruction of property (1975); he has one prior felony conviction for burglary (1974). Appellant was on probation for the latter offense when the instant crime was committed.[9] Stobaugh has been a heroin addict since the age of 16 and admits to having used several of the hallucinogenic drugs as well as synthetics and opiates. He has made several attempts to obtain treatment for his addiction but each has been unsuccessful. Except for a 20 month period extending from January 1970 to August 1971 when appellant was a one-third partner in a family corporation, appellant has never been employed for more than a few months at a time. The psychiatric evaluation of Stobaugh concluded that appellant suffered from an antisocial personality disorder and that his prognosis was poor.

■ Viewing all of the foregoing facts, we cannot conclude that the sentencing judge was clearly mistaken in characteriz-

---

7. Although followed in only a minority of jurisdictions, the Massachusetts rule has been adopted by Congress for use in the federal courts. 18 U.S.C. § 3501(a) (1976).

8. The issue was raised in *Ladd v. State*, 568 P.2d 960, 967–68 (Alaska 1977), but we declined, on procedural grounds, to resolve the matter.

9. We have previously held that such recidivism may properly be recognized as a significant factor in assessing sentence. *Shelton v. State*, 611 P.2d 24 (Alaska 1980); *Torres v. State*, 521 P.2d 386, 389 (Alaska 1974).

ing appellant as a dangerous criminal. The record indicates that the judge carefully evaluated all of the evidence in light of the five sentencing criteria [10] set forth in *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970), and came to a reasoned conclusion. We find no error.

AFFIRMED.

RABINOWITZ, C. J., concurs.

BURKE, J., not participating.

RABINOWITZ, Chief Justice, concurring.

Although I agree with the majority's conclusion that the in camera confession was voluntary, I think that additional consideration of the relevant circumstances is appropriate.

The Supreme Court, in *Hutto v. Ross*, 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194, 197 (1976), in the context of the facts of that case, stated:

> The Court of Appeals reasoned that respondent's confession was involuntary because it was made "as a result of the plea bargain" and would not have been made "but for the plea bargain." Id. [*Mobley ex rel. Ross v. Meek*, 531 F.2d 924], at 926, 927. But causation in that sense has never been the test of voluntariness. See *Brady v. United States*, 397 U.S. 742, 749–50, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). The test is whether the confession was " 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.' " *Bram v. United States*, 168 U.S. 532, 542–543, 18 S.Ct. 183, 187, 42 L.Ed. 568 (1897); see *Brady v. United States*, supra, 397 U.S., at 753, 90 S.Ct., at 1471, 25 L.Ed.2d 747. The existence of the bargain may well have entered into respondent's decision to give a statement, but counsel made it clear to respondent that he could enforce the

terms of the plea bargain whether or not he confessed. The confession thus does not appear to have been the result of " 'any direct or implied promises' " or any coercion on the part of the prosecution, and was not involuntary. *Bram v. United States*, supra, 168 U.S., at 542–543, 18 S.Ct., at 186–187, 42 L.Ed. 568.

This passage seems to suggest that if any promise did induce the confession, it is involuntary. I agree with the majority that this implication should not be taken literally, and that the facts of each case must be examined closely to determine if the defendant's will was overborne.

A most useful summary of some of the relevant factors to be considered in making this determination of voluntariness was set forth in *United States v. Williams*, 447 F.Supp. 631, 636–37 (D.Del.1978):

> [A]nalysis of cases discussing the voluntariness of statements in the context of inducements by prosecuting authorities discloses that the factual nuances referred to above may well be dispositive. A non-exhaustive list of potentially material considerations includes whether: (1) defendant is in custody at the time of the statement, *see, e. g. Brady*, supra, 397 U.S. at 754, 90 S.Ct. 1463 [at 1472]; *Bram*, supra, 168 U.S. at 562, 18 S.Ct. 183 [at 194]; *Grades [v. Boles]*, supra, 398 F.2d [409] at 413; *Williams v. United States*, 328 F.2d 669, 671 (5th Cir. 1964); [*United States v.] Harris*, supra, 301 F.Supp. [996] at 997; (2) defendant is alone and unrepresented by counsel, *see e. g., Brady*, 397 U.S. at 754, 90 S.Ct. [at 1472] 1463; *Bram*, 168 U.S. at 562–63, 18 S.Ct. [at 194] 183; *Grades*, 398 F.2d at 410 n. 2; *Harris*, 301 F.Supp. at 997–98; (3) the promise or inducement is initiated by prosecuting officials as opposed to defendant or someone acting on his behalf, *see, e. g., Shotwell Manufacturing Co. v. United States*, 371 U.S. 341, 352, 83 S.Ct. 448 [455], 9 L.Ed.2d 357 (1963); *Bram*,

---

**10.** (1) Rehabilitation of the offender, (2) isolation of the offender from society to prevent criminal conduct during the period of confinement, (3) deterrence of the offender himself after his release from confinement or other penological treatment, (4) deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and (5) reaffirmation of societal norms.

168 U.S. at 564, 18 S.Ct. 183 [at 195]; *Williams v. Brewer*, 509 F.2d 227, 237 (8th Cir. 1974) (dissenting opinion); *Williams v. United States, supra*, 328 F.2d at 672; *Hunter, supra*, 372 F.Supp. at 302; (4) defendant is aware of his constitutional and other legal rights, *see, e. g. Grades*, 398 F.2d at 413; *Ferrara, supra*, 377 F.2d at 18; *Williams v. United States*, 328 F.2d at 673; *[United States v.] Turner, supra*, 423 F.Supp. [959] at 961; *Hunter*, 372 F.Supp. at 298; (5) the potentially incriminating statement is part of an abortive plea bargain, *see, e. g., Hutto, supra*, 429 U.S. at 29–30, 97 S.Ct. 202 [at 203]; *Gunsby v. Wainwright*, 552 F.2d 127–28 (5th Cir. 1977); (6) the promises or inducements leading to the statement are fulfilled by prosecuting authorities, *see, e. g., United States v. Barker*, 542 F.2d 479, 484 n. 10 (8th Cir. 1976); *Hunter [v. Swenson*, 372 F.Supp. 287, aff'd], 504 F.2d at [1104] 1105; *Grades*, 398 F.2d at 411–13; *Harris*, 301 F.Supp. at 998–99; and (7) defendant is subject to protracted interrogation or evidence appears on the record to show that coercion precludes the statement from being knowing and intelligent, *see, e. g., Haynes v. Washington*, 373 U.S. 503, 513–14, 83 S.Ct. 1336 [1342–1343], 10 L.Ed.2d 513 (1963); *Bram*, 168 U.S. at 561–62, 18 S.Ct. 183 [at 194]; *Grades*, 398 F.2d at 413; *Ferrara*, 377 F.2d at 18. This Court need not pass judgment on the validity of each of these individual considerations. Considered as a whole, the distinctions perceived in the case law lead ineluctably to the conclusion that the totality of circumstances must be examined in order to evaluate the voluntariness of an induced confession; adherence to a per se suppression doctrine is unsatisfactory. [footnote omitted] [1]

It is in light of relevant factors such as these that the facts of each case must be examined. The majority finds the presence of an attorney and the type of bargain struck sufficient to conclude that Stobaugh's will was not overborne. I think the question a difficult one, requiring a more detailed examination of the facts of the case at bar.

The promise in this case is clearly not part of any impermissible conduct on the part of police or prosecution. Stobaugh was not subjected to interrogation or coercive pressure by the police. It was Stobaugh's attorney who initiated the bargaining in an attempt to persuade the prosecution to agree to deferred prosecution.[2] Stobaugh was at all times counseled and represented by an experienced criminal trial attorney. Stobaugh was also fully aware of his constitutional rights at the time of the confession. The promises for deferred prosecution was at all times adhered to by the prosecution, and there was no abortive "plea bargain" in this case. No indicia of involuntariness flowed from impermissible actions by the state.

However, several other facts indicate that Stobaugh may not have acted voluntarily. First, it seems that Stobaugh was incarcerated at the time that he was considering the decision whether to accept the offer of deferred prosecution in return for agreeing to enter a drug rehabilitation program and give a confession. At the time of this offense, Stobaugh was on probation from a burglary conviction in Texas for which he had received a ten-year sentence suspended for ten years. A criminal conviction would have violated the terms of his probation while a deferred prosecution would not. He could not have gone to trial without substantial risk that, given his prior offenses, he would receive a substantial sentence in Alaska and have the ten-year sentence in Texas imposed. When Stobaugh talked with his counsel initially

1. *See generally* Dix, *Mistake, Ignorance, Expectation of Benefit, and the Modern Law of Confessions*, 1975 Wash.U.L.Q. 275 (1975).

2. *See United States v. Williams*, 447 F.Supp. 631, 637 n. 13 (D.Del.1978), quoting Lederer, *The Law of Confessions—The Voluntariness Doctrine*, 74 Mil.L.Rev. 67, 82 (1976) (footnote omitted): "An accused who *initiates* a bargaining session with authorities by offering a statement in return for some concession will not normally be heard to complain that his statement was involuntary."

about deferred prosecution, he did not want to go to a drug rehabilitation program, having had a prior unsuccessful experience with such a program. However, after talking with someone from Future House, he agreed. His counsel had informed Stobaugh of his opinion that he would have a very poor chance at trial and tried strongly to discourage him from exercising his right to go to trial.

On balancing these competing factors, I agree with the majority that Stobaugh's confession was voluntary in light of the totality of the circumstances. Despite the spectre of a lengthy period of incarceration if convicted, Stobaugh was carefully counseled by his attorney as to the options available to him and his will does not seem to have been overborne in the particular circumstances.